COFFMAN et al., Plaintiffs, v. GATES et al., Defendants; GHIO and GHIO, Trustee, Appellant, v. HARBAUGH et al., Respondents.

St. Louis Court of Appeals, February 21, 1905.

1. **PRACTICE: Death of Party Not Interested.** Where a trustee, party to an action, had no interest in the issues involved in the appeal of the case, his death pending the appeal did not make it necessary to delay the case for the purpose of having his successor in trust appointed.

2. **TRUSTEES: Removal of Trustee: Divesting Title.** An order removing several testamentary trustees and appointing a new trustee in their stead will not have the effect of divesting one of the former trustees of title to certain land and investing the new trustee therewith, where such land was held by the former for himself and in trust for other beneficiaries under the will, having been bought by him under the foreclosure sale of a mortgage given to secure funds of the estate, in the absence of apt words in the order removing the trustees, indicating an intention so to divest and invest title to that particular land.

3. **———: Reimbursement for Defending Trust Property.** Where the holder of the legal title to real estate, one-third for himself and two-thirds in trust for other beneficiaries, employed counsel and expended money in defending ejectment suits for the land and paid a judgment for rents and profits accruing while he and his beneficiaries were in possession, he had a right to reimbursement from his *cestui que trust* for their proportion of the amount so expended.

4. ——: ——: **Partition.** On the sale of such land in partition, under the jurisdiction of the circuit court to equitably adjust claims of parties in such proceeding, he is entitled to reimbursement out of the funds arising from such sale.

5. ——: ——: ——. He can not have a personal judgment against his *cestui que trust* for the amount expended, but is limited in the partition proceeding to the funds arising from the trust property.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor,* Judge.

REVERSED AND REMANDED.

*Noble & Shields, W. B. & Ford W. Thompson* and *D. C. Taylor* for appellants.

(1) The circuit court is vested with all the jurisdiction and power that a court of chancery ever had in partition suits. Holloway v. Holloway, 97 Mo. 628, 11 S. W. 233; Saving Inst. v. Collonious, 63 Mo. 290; Spitts v. Wells, 18 Mo. 468; Pratt v. Clark, 57 Mo. 189; Stewart v. Caldwell, 54 Mo. 536. (2) The court having equitable jurisdiction, it was competent for the defendant James C. Ghio, individually and as trustee, to set up his rights, as he did by an answer by way of cross-bill. All the parties in interest and the *res* itself were before the court, and, as stated in the above authorities, the court will not stop short of rendering complete justice between the parties. The court will hear and determine the rights of the parties, and award to James C. Ghio, as trustee, all of his rights as well as to James C. Ghio, as a tenant in common individually, on the principle of avoiding a multiplicity of suits. Trustees v. Greenough, 105 U. S. 533; Railroad v. Pettus, 113 U. S. 116; Pomeroy, Eq. Jur., sec. 1085; Gooding v. Gibbs, 17 How. (U. S.) 277; Perry on Trusts sec. 474; Matter of Holden, 12 N. Y. Supp. 842, 58 Hun (N. Y.) 611. (3) We contend that James C. Ghio is

entitled to be reimbursed for his expenditures in behalf of the property as cotenant, the benefit of which the other cotenants enjoy. Matter of Holden, 12 N. Y. Supp. 842; 58 Hun 611; 1 Eq. Cases, p. 291; Irving, Eq. Jur., 86; Percy v. Millandon, 18 Martin 616; 2 Story, Eq. Jur., sec. 1236; Coffin v. Heath, 6 Met. 80; Quinette v. Thompson, 19 Am. Dec. 350, 9 Pick. 31; Gage v. Mulholland, 16 Grant Ch. Rep. 145; Carter v. Penn, 99 Ill. 390; Guppette v. Robinson, 14 Ill. App. 377; Wilton v. Tozwell, 86 Ill. 29; Hoven Mehlgarten, 19 Ill. 91; Dillinger v. Kelly, 84 Mo. 561; Hinters v. Hinters, 114 Mo. 26; Hinters v. Hinters, 114 Mo. 29.

*Wm. F. Broadhead* for respondents.

(1) James C. Ghio, the appellant, ceased to have any authority as trustee under the will of John B. Ghio, from the date of his resignation on July 30, 1892, certainly from April 3, 1893, when the court accepted his resignation, appointed F. X. Barada sole trustee, and divested him of all title as such trustee, and vested the title to the trust estate in the new trustee. He could thereafter bind no one interested in the trust estate, had no interest in this property as trustee under said will, and his only interest in this property, besides his individual share, was that of a trustee holding a barren, inactive trust because he held the legal title. (2) The title to this land as a trust estate under John B. Ghio's will, became vested in the new trustee, Barada, from April 3, 1893, the services were performed, and the expenses and costs accrued after this date, and if appellant's claims are just and legal, his recourse is against Barada as trustee, the holder of an active controlling trust. (3) The claims of the appellant against his codefendants in this partition proceeding cannot be adjudicated, under the law of this State. In re Tyler, 40 Mo. App. 387; Barkhoefer v. Barkhoefer, 93 Mo. App. 378, 67 S. W. 674; Holloway v.

Holloway, 97 Mo. 639, 11 S. W. 233; Green v. Walker, 99 Mo. 73; R. S. 1879, sec. 3521; Gun v. Thurston, 130 Mo. 344, 32 S. W. 654; Hannsman v. Richtor, 53 Atl. 177, 63 N. J. Eq. 753.

*George E. Smith* for respondent Layton.

When the title to undivided interest in land is held by a trustee having a power of disposition and management, the *cestui que trust* is neither a joint tenant, a tenant in common, nor a coparcener, with the owner of the other moieties, and cannot maintain an action for the partition thereof. 21 Am. & Eng. Ency. Law (2 Ed.), 1156; Harris v. Larkins, 29 N. Y. Sup. (22 Hun) 488; Thebaud v. Schemerhorn, 10 Abb. N. C. 72. The trustee, however, under the like title, may maintain an action for partition of the land without joining the beneficiary as a party plaintiff. Smith v. Gaines, 38 N. J. Eq. 65; Gallie v. Eagle, 65 Barb. (N. Y.) 583; Snell v. Harrison, 131 Mo. 495, 32 S. W. 37.

STATEMENT.

In a suit brought by Ella Gates Coffman and her husband, G. L. Coffman, and C. L. Travous versus John J. Gates, James C. Ghio, Mary O. Harbaugh and her husband, Simon J. Harbaugh, Andrew S. Barada, Mary E. Layton and her husband W. Pratt Layton, John Ghio Barada, Francis X. Barada, trustee under the will of John B. Ghio, deceased, James C. Ghio, trustee, and John M. Garth for partition of three hundred and five and ninety-six one-hundredths acres of land situated in the county of St. Louis, Missouri, and known as the "Gates farm," on June 5, 1902, the circuit court of the city of St. Louis, to which the cause had been transferred by change of venue, rendered an interlocutory decree of partition and afterwards, on the report of commissioners appointed by the court in said decree, the land was ordered sold. A sale was

made and approved by the court and the proceeds of sale were ordered distributed by the court. In the order of distribution, Mary Harbaugh was awarded $1,344.91, Andrew Barada $448.30 1-3 and Mary E. Layton $448.30 1-3 as their distributive shares of the proceeds of sale. The distributive shares of the other parties to the suit were paid over to them and are not involved in this controversy.

In his answer to the petition in partition, defendant James C. Ghio, individually and as trustee, claimed that he had been compelled to expend and did expend, for the benefit of his cotenants in the lands the following sums of money:

"1900.

Oct. 5. Amount paid to attorneys for plaintiff in case of Gates et al. v. Seibert et al., for judgment and costs....$4062.80

Interest thereon at six per cent per annum, from Oct. 5, 1900, to July 10, 1903    673.74

Oct. 5. Attorneys' fees and expenses of W. B. Thompson in ejectment suits and suit on bond .. ................   775.00

Oct. 5. Attorneys' fees and expenses of Noble & Shields in ejectment suits and suit on bond .... .... ...........:.....   320.35

Oct. 5. Attorneys' fees and expenses of D. C. Taylor in ejectment suits and suit on bond .......... ..... ......   281.05

Interest on said amount of fees and expenses, $1,376.40 from October 5, 1900, to July 10, 1903 ...... .... ..........   228.24

1901.

Jan. 29. Costs of change of venue in case of James C. Ghio, trustee v. Ella Gates Coffman et al ...............   10.00

Interest on same from Jan. 29, 1901, to July 10, 1903 ........ ..............    1.51

| | |
|---|---|
| July 3.    Amount paid William A. Darniel for services and attendance.......... | 20.00 |
| Interest on same from July 3, 1901, to July 10, 1903 .. ..................... | 2.42 |
| 1902. | |
| Nov. 2.    Costs of circuit court in case of James C. Ghio, trustee v. Ella Gates Coffman et al ......'... .............. | 41.50 |
| Interest on same from Nov. 2, 1902, to July 10, 1903 ............... ........ | 1.75 |
| Attorneys' fees in case of James C. Ghio trustee v. Ella Gates Coffman et al.. | 100.00 |
| Attorneys' fees in this suit ............ | 100.00 |
| | $6,618.36" |

The answer also made the following claims:

"That one-third of said amount of $6,618.36, or $2,206.12 is chargeable against Mary O. Harbaugh, less her interest in the fund in court, being 1-2 of $2,689.82, or $1,344.91, and that judgment should be rendered against said Mary O. Harbaugh and in favor of said James C. Ghio for $861.21.

"That one-ninth of said amount of $6,618.36, or $735.37 1-3, is chargeable against defendant Andrew Barada, less his interest in said fund in court, being 1-6 of $2,689.82, or $448.30 1-3, and that judgment should be rendered against said Andrew S. Barada and in favor of said James C. Ghio for $287.07.

"That one-ninth of said amount of $6,618.36, or $735.37 1-3, is chargeable to defendant Marie Elsie Layton, less her interest in said fund in court, being one-sixth of $2,689.82, or $448.30 1-3, and that a judgment should be rendered against said Marie Elsie Layton and in favor of said James C. Ghio for $287.07.

"That one-ninth of said amount of $6,618.36, or $735.37 1-3, is chargeable against defendant John Ghio Barada less his interest in said fund in court, being

one-sixth of $2,689.82, or $448.30 1-3 and that a judg-
ment should be rendered against said John Ghio
Barada and in favor of said James C. Ghio for
$287.07.''

The court denied the relief prayed for and ordered
the several distributive shares of Harbaugh, Barada
and Layton to be paid over to them; from this order
James C. Ghio appealed. That Ghio paid $4,062.81 as
judgment and costs in the case of Gates et al. is not
controverted; nor is the fact that he paid the attor-
neys' fees and costs as alleged; nor is it controverted
that the attorneys' fees are reasonable. The conten-
tion of the three respondents, Harbaugh, Barada and
Layton, is that they are in nowise liable to James C.
Ghio for any part of these moneys paid out by him.

We will have to begin with the year 1885 to get
at the facts out of which this controversy arose. In
that year John B. Ghio died testate; by his will he left
his estate (a large one) to three trustees, his widow
Elizabeth Ghio, William Booth and his son, James C.
Ghio (appellant). The trustees, while administering
the estate, loaned to Jacob S. Gates and Lavina Gates
the sum of $10,000, taking notes for the principal and
interest, secured by a deed of trust on what is known
as the ''Gates Farm.'' The deed of trust was fore-
closed and the trustee in the deed of trust executed
his deed to James C. Ghio in which it was provided
that Ghio should, as is provided in the will of his
father, John B. Ghio, take in fee an undivided one-
third interest in the lands to himself and heirs and
hold the undivided two-thirds in trust without power
of sale, except by consent of the trustees of John B.
Ghio's estate; one-third for Mary Barada and her
children and one-third for the use of Mary Cummis-
key. After the execution of this deed, James C. Ghio,
in his individual capacity, and as trustee with Eliza-
beth Ghio and William Booth, the other trustees of the

Vol 110 app—31

estate of John C. Ghio, leased the lands to William and Albert Seibert for a term of five years at a yearly rental of one thousand dollars. The lessees entered into possession, paid the rent and held the lands as tenants for the term of their lease. The lands were formerly owned by John Gates who died in the year 1872, leaving his widow, Lavina Gates, and three children to whom by will he left most of his property. The fifth clause of his will reads as follows: "I hereby give and bequeath to my son, Jacob Snyder Gates (and his wife if he should marry) and after their decease to his children, the land," etc., which is the same land partitioned by this suit. In 1876 Jacob Snyder Gates married Lizzie A. Cool, who gave birth to a child in 1877. The mother and child died within a month after the birth of the child. In November, 1878, Jacob Snyder Gates married Mary J. Filley, by whom at the time he had an illegitimate child, then about three years old, which he acknowledged as his child and ever afterwards treated her as such. She is now Ella Gates Coffman. There were two other children born of this marriage, John J. Gates and Jacob Snyder, Gates, Jr. Jacob Snyder Gates' wife died in 1884. In 1893 Ella and John J. Gates brought suit in ejectment against Elizabeth Ghio to recover possession of the lands partitioned in this suit. A short time afterwards and in the same year, Ella Gates commenced a like suit against Francis X. Barada et al.; both of these suits were dismissed by the plaintiffs. In September, 1894, a suit in ejectment for the recovery of the lands was brought by John J. Gates (a minor) by his guardian, and Ella Gates versus Seibert et al., which resulted in a judgment for plaintiffs for an undivided eleven-sixteenths of the land and $2,165 damages, and finding the monthly rents and profits to be $35. The case was appealed by the defendants to the Supreme Court, where the judgment was affirmed at the April term, 1900, by a divided court (Gates et

al. v. Seibert et al., 157 Mo. 254). When the appeal was taken, a supersedeas bond was given by the Seiberts with James C. Ghio as surety. After the affirmance of the judgment, suit was brought on this bond to recover the damages assessed in the ejectment suit ($2,165) with accrued interest and the rents and profits pending the appeal at the rate of $35 per month.

In the judgment for partition, the court found that Ella Gates Coffman had agreed to convey and transfer to Charles Travous one-third of her interest in the lands and set apart and awarded one-third of her distributive share of the proceeds of sale to the said Charles Travous. The interests of Andrew Barada, Mary Harbaugh and Mary Layton were derived by them as descendants of legatees in the will of John B. Ghio. In April, 1893, a suit was brought in the circuit court by William Booth, one of the trustees appointed by the will of John B. Ghio, against the other trustees and beneficiaries under the will, which resulted in a decree relieving the trustees appointed by the will of the trust, and Francis X. Barada was appointed sole trustee of the estate by consent of all parties in interest as well as by the consent of the trustees appointed by the will. Barada was made by a party defendant in this suit for partition. Pending the appeal, he departed this life. No successor, as trustee of the estate, has been appointed and it is suggested by counsel that the appeal should be held in abeyance until a trustee of the estate of John B. Ghio is appointed and made a party to these proceedings.

BLAND, P. J. (after stating the facts).—Francis X. Barada, trustee, as stated above, was a party to the partition suit, to the judgment and order of sale and the order of distribution. He made no objection to any of the proceedings and made no claim to any portion of the money arising from the sale and if it be conceded that he was a necessary party to the partition

suit, he is not interested in the order of distribution, and this (the distribution of the proceeds of the sale) being the only question brought up on the appeal for adjudication, we see no reason for delaying the case for the purpose of having a new trustee of the estate appointed and made a party to the appeal. James C. Ghio, Mary Harbaugh, Andrew Barada and Marie Layton are the only parties contesting the order of distribution and for this reason are the only necessary parties to a complete determination of all the issues brought up by the appeal. James C. Ghio, by virtue of the trustee's deed conveying the lands to him, took an undivided one-third interest therein in fee and held the remaining two-thirds as trustee for the residuary beneficiaries of his father's will without power of sale. The purpose of both the grantor and grantee was to give James C. Ghio an undivided one-third interest in the lands, and to incorporate the other undivided two-thirds in the body of the assets of the estate of John B. Ghio, to be held in trust, however, for the benefit of Mary Barada and Mary Cummiskey. The respondents claim that by decree of June 3, 1893, of the circuit court, appellant was removed as trustee in this deed and Francis X. Barada substituted trustee in his stead. The decree appointed Barada trustee under the will and ordered that he should "become and stand possessed and clothed with all the estate, interest, rights and powers, and be subject to and charged with all the duties, liabilities and obligations in respect of the trust estate hereinabove designated and described, as trustee for, under and in conformity with the provisions of the last will and testament of John B. Ghio, deceased." It is further provided by the decree that the trustees appointed by the will should deliver to Barada all the personal property of the estate and "also surrender the charge of the real estate aforesaid (described in the decree) unto said Barada," and that upon making such surrender of real estate and de-

livery of personal property, the trustees under the will should "be and remain fully, finally and forever discharged and acquitted of and from any and all liabilities on account of any and all matters, affairs and things whatsoever touching, growing out of, or concerning said trust or the administration or conduct thereof." As a part of the real estate of the estate of John B. Ghio, the decree specifically mentions and describes the land known as the "Gates farm," in St. Louis county, Missouri, and correctly refers to the deed made by William Booth, trustee, to James C. Ghio, as of date May 30, 1889, and recorded in the records of said county in Book 40, p. 513.

After reciting apt provisions of the will of John B. Ghio, the loan of the ten thousand dollars to Gates and that the same was a part of the trust fund, the taking of the deed of trust to secure the loan, the default of payment, the sale under the deed of trust by the trustee and the purchase by James C. Ghio, the deed reads:

"Now, therefore, this deed witnesseth, that the said James C. Ghio is to have and hold said described property in the following manner: One-third undivided to himself and his heirs forever, to be disposed of as he sees fit. One-third undivided to the use of said Mary Barada and her children, and one-third undivided to the use of Mary O. Cummiskey as provided for in the will of said Ghio, as part of the residue or personalty of his estate, said last undivided two-thirds being subject to sale and conveyance only by the trustees under said will as hereinafter provided for, and further provided that as it may become necessary and expedient in the opinion of the trustees under the said will of Ghio to sell the undivided one-third of Mary Barada and her children, and the undivided one-third of said Mary O. Cummiskey, in said described real estate, for the purpose of once more rendering the same into money as it was in their hands when they made

the said loan of $10,000 to said Gates, or so far as two-thirds of the same are concerned, that they, the said trustees, shall have full power and authority at any time hereafter to sell, dispose of and convey the said undivided two-thirds of Barada and Cummiskey in said real estate, or any part thereof, either in the amount of land or undivided interest for any sum or sums they may see fit, and the purchaser or purchasers, at said sale or sales shall take a fee simple title absolute as far as said two-thirds are concerned to said real estate or any part thereof, either in quantity of land or amount of interest on receiving said trustees' deed therefor, free and clear of any trusts whatsoever.''·

By this deed the interest of the legatees (except Elizabeth Ghio) under the Ghio will, in and to the lands representing a part of the trust estate was distributed in accordance with the terms of the will. James C. Ghio took title in fee to an undivided one-third and held title to the remaining two-thirds as trustee for Mary Barada and her children and Mary O. Cummiskey; his title as trustee to be divested by sale, and conveyance to be made at any time by the trustees named in the will, he being one of them at that time. The deed, in effect, partitioned the lands between the parties in interest, one-third absolutely and two-thirds in trust which trust might be executed at any time by sale to be made by the trustees named in the will, the legal title to the whole being vested in James C. Ghio. There are no apt words in the decree appointing Barada trustee to divest title to the Gates land out of James C. Ghio. There is no clause or terms in the decree divesting title out of Ghio and investing Barada therewith; in the absence of such words indicating an intention to divest and invest title the decree cannot have that effect. [McKinney v. Settles, 31 Mo. 541; Washburn on Real Property, sec. 2087.] And we do not think the decree has any other effect in respect

to these lands than to substitute Barada as trustee for the purpose of making sale according to the provisions of the deed. This seems to have been the view of the trial court as the interlocutory decree (unappealed from) found that James C. Ghio held one-third of the lands as trustee for Mary Barada and her children and one-third as trustee for the children of Mary Cummiskey.

There is evidence in the record tending to show that James C. Ghio and Barada acted in conjunction in the employment of counsel and in the conduct of the defense of the ejectment suit, and Barada testified that he notified all the parties in interest of the pendency of the suit. There is no evidence, however, that they were consulted about the employment of counsel or the conduct of the defense to the suit or that they or anyone of them ever expressedly assented to any of the steps taken in the defense. On the other hand, there is no evidence that they ever interposed any objections to the counsel employed by Ghio and Barada or to the conduct of the defense. For the reason they did not expressly assent to the employment of the counsel or to the defense of the suit, it is contended they are not bound to contribute toward the expense of the litigation. That the defense was made in good faith is not controverted. That James C. Ghio held one-third of the lands in fee and the remaining two-thirds as trustee for the respondents is an adjudicated fact in this identical case. Now, while we think it was the duty of Barada, as trustee of the estate, to pay some attention to the defense of the ejectment suit, which the evidence shows he did, the position of James C. Ghio, as part owner, and trustee of the remaining part, made it imperative on him to protect the interest of the *cestui que trust*. Having done this in good faith, should the respondents share their reasonable portion of the expense, is the question presented for solution. It is well to note in this connection that the

evidence shows the respondents received two-thirds of all the rents that accrued during the life of the lease to the Seiberts, most of which accrued pending the eject-ment suit. The claim of appellant for contribution is an equitable one set forth in his answer and cross-bill. The jurisdiction of the circuit court in partition pro-ceedings to equitably adjust the claims of the parties in interest is settled by the cases of Holloway v. Hollo-way, 97 Mo. 628, 11 S. W. 233; Real Estate Sav. Inst. v. Collonious, 63 Mo. 290; Pratt v. Clark, 57 Mo. 189; Stewart v. Caldwell, 54 Mo. 536, and Spitts v. Wells, 18 Mo. 468. And we think the rights of appellant and respondents to the fund arising from the sale of the land ought to be adjudicated on equitable principles.

In Trustees v. Greenough, 105 U. S. 527, it is said: "One jointly interested with others in a common fund, who, in good faith, maintains the necessary litigation to save it from waste and secure its proper applica-tion, is entitled in equity to the reimbursement of his costs as between solicitor and client, either out of the fund itself, or by proportionate contributions from those who receive the benefit of the litigation." This case was followed in Central Railroad & Banking Com-pany v. Pettus, 113 U. S. 116.

Pomeroy, in his work on Jurisprudence, at section 1085, says: "The trustee is entitled to be allowed, as against the estate and the beneficiary, for all his proper expenses out of pocket, which include all payments ex-pressly authorized by the instrument of trust, all rea-sonable expenses in carrying out the direction of the trust, and, in the absence of any such directions, all expenses reasonably necessary for the security, pro-tection, and preservation of the trust property, or for the prevention of a failure of the trust. He is also indemnified in respect of all personal liabilities in-curred by himself for any of these purposes."

Perry on Trusts (5 Ed.), sec. 485, says: "A trustee may reimburse himself for money advanced in

good faith for the benefit of the *cestui que trust*, or for the protection of the property, or for his own protection in the management of the trust.''

In Downing v. Marshall, 37 N. Y. 380, it is said: ''So far as trustees incur expense in managing trust property, they are entitled to be reimbursed from the trust fund. Reasonable attorney's and counsel fees connected with the management of the business of the trust, will be allowed as a part of the expenses.''

When the ejectment suit was brought, James C. Ghio had the alternative to let judgment go by default and lose the property or to defend the suit in his own behalf and on behalf of the *cestui que trust*. He judiciously chose to make a defense. To make a defense, employment of counsel was indispensable and when the judgment went against the defendant in the circuit court, to avoid an ouster of the tenants, it was necessary to give a supersedeas bond pending appeal to the Supreme Court. The counsel employed by him earned and were entitled to their fees. Rents and profits accumulated pending the appeal had to be paid. These counsel fees and rents and profits James C. Ghio was obliged to pay. He paid for himself and for the other parties interested in the lands, and on both principle and authority, it seems to us, that having thus paid out his own money to protect the trust fund or property as well as his own interest, he had a right to look to the trust property for a proportionate reimbursement, that is, for reimbursement of two-thirds of the amount he was out. But the distributive shares of the respondents in the fund are insufficient to meet this demand and appellant asks not only for the whole of the trust fund represented by the distributive shares of respondents arising from the partition sale but for personal judgments against the respective respondents for balances over and above each of their distributive shares. In the absence of any agreement, express or implied, to reimburse appellant, we do not think that he is entitled

in this proceeding to look to the *cestui que trust* individually for reimbursement but is confined to the trust property.

The judgment is reversed and the cause remanded to be proceeded with as herein indicated. All concur.