797 S.W.2d 864 (1990)
In the Matter of Rosalinda HEISSERER, an Incapacitated and Disabled Person.
JACKSON EXCHANGE BANK AND TRUST COMPANY and Gary Spinks, Co-Trustees, Plaintiffs-Appellants,
v.
Harl FRIEDRICH, Co-Trustee and Individually, Defendant-Respondent.
No. 16306.
Missouri Court of Appeals, Southern District, Division Two.
October 24, 1990.
*865 Tom K. O'Loughlin II, Kathleen A. Wolz, O'Loughlin, O'Loughlin & McManaman, Cape Girardeau, for plaintiffs-appellants.
Michael L. Jackson, Buerkle, Beeson & Ludwig, Jackson, for defendant-respondent.
HOGAN, Judge.
This appeal is taken from a judgment of the Probate Division of the Circuit Court of Scott County construing an inter vivos trust. The background facts as found by the trial court and as reflected by the record are that Rosalinda Heisserer and her husband Zeno owned a 180-acre farm in Cape Girardeau County. They became the parents of one child, Cathrine. Cathrine is fifty-five years old and is retarded. She is unable to speak but can communicate with her mother.
In March 1983, Zeno Heisserer drowned near his farm. Rosalinda and Cathrine moved to Scott City a short time after his death. In July 1983, Rosalinda executed a revocable inter vivos trust. Nominating herself as sole trustee, she specifically provided that should she become incapacitated or disabled plaintiffs and the defendant would become successor trustees. Spinks is a residuary beneficiary of the trust; as such he receives seventy per cent of all remaining trust assets upon the death of *866 the survivor of Rosalinda and Cathrine. Also named as residuary beneficiaries of the trust are the Immaculate Conception Catholic Church of Jackson, Missouri and St. Joseph's Catholic Church of Scott City, Missouri, each of which is to receive five per cent of the residuary estate. William Heuring, Rosalinda's brother, is to receive five per cent of the residuary estate and Patricia Chapman, Rosalinda's niece, is to receive fifteen per cent. The settlor's reasons for nominating defendant Friedrich as a successor trustee appear, in part, in Article VII, paragraph 15, of the trust instrument, which provides:
"I have appointed Harl Friedrich as Co-Successor Trustee because he is familiar with and has farmed the Zeno Heisserer farm land. I specifically direct that he be given the first right to continue farming the land and that his decisions with respect to the operation of the farm be followed by the other Co-Successor Trustees."
It is significant that both Spinks and Friedrich have a species of expectancy in the residuary estate. As noted, the trust instrument provides that all remaining trust property shall be distributed to the named beneficiaries upon the death of Rosalinda and Cathrine Heisserer. It is provided, however, in Article III, paragraph 2, of the trust instrument, that that distribution "is specifically subject to the following provisions:
(i) Gary Spinks shall have the right to take as part of his share my personal residence, in the event it is part of this trust, located at 1403 Broadway, Scott City, Missouri, at the fair market value thereof as either determined by the value as finally determined by the Internal Revenue Service for Federal Estate Tax Purposes or, in the event of no such value, by the appraisers of the estate and trust assets.
(ii) Harl Friedrich shall have the right, provided he or his family is farming the Zeno Heisserer farm, described hereafter, to purchase that farm at 2/3 of the fair market value determined by the same method set out in paragraph (i)."
It is inferable from the record and the trial court found that Friedrich and the Heisserer family had developed a warm friendship during the time Friedrich operated the Heisserer farm. Friedrich described his relationship with the Heisserers as being "[p]retty much like my own family." When the Heisserer farm flooded, as it sometimes did, Friedrich and Fred Propst would assist the Heisserers in moving their personal effects, farm machinery, livestock and grain from the flooded property. Friedrich also kept and fed the Heisserer livestock on his own property while the Heisserer farm was flooded. He neither expected nor received compensation for such personal services. The trial court concluded, and we find it to be a reasonable conclusion, that Rosalinda reposed considerable trust in defendant Friedrich.
On September 16, 1986, plaintiff Spinks petitioned the Probate Division of the Circuit Court of Scott County, requesting the appointment of a guardian of the person and conservator of the estate of Rosalinda Heisserer. Spinks further requested that he be appointed guardian and conservator. On February 9, 1987, Rosalinda was declared to be totally disabled within the meaning of § 475.078.2, RSMo 1986.[1] Spinks was appointed conservator of Rosalinda's estate. As provided by the trust instrument, Spinks, Friedrich and the Jackson Exchange Bank and Trust Company *867 (the bank) became successor trustees.[2] At the time of trial, the guardianship estate had approximately $25,000 in assets; the trust had assets valued at "a little over $800,000"; $212,000 of this amount was attributed to the value of the farm.
The controversy is focused upon the proper disposition of the Heisserer farm and defendant Friedrich's contingent interest therein. The farm is a 180-acre farm. According to one witness who inspected and appraised the farm, it consisted of 154.5 "crop acres," 23.5 acres in timber and two acres in farmstead. This witness, testifying as an expert, stated that the farm was composed of fertile, productive soil, although it is subject to being flooded when there is a great deal of rain and the [Mississippi] river rises.
Friedrich and one Fred Propst leased the Heisserer farm in 1973. They farmed the property together, as Propst put it, until 1982, when Propst retired from the farming operation. The rental agreement was a sharecrop or "crop-share" agreement; the landlord received one-third of the crop and paid for one-third of the hay baling. Friedrich testified that the terms of the rental agreement had not changed substantially at the time of trial.
The trial court found and specifically recited that the Heisserer farm is located in close proximity to the Mississippi River and is subject to flooding. The farm was flooded in 1982, 1983, 1985 and 1986. During periods of high water, the Heisserer farm is sometimes completely submerged, subjecting both the tenant and the landlord to a total loss of their crop. Crop insurance is available, but such insurance covers only the farmer's expense and does not compensate him for his loss of income. The obvious conclusion is that although the Heisserer farm is productive, its operation is inherently risky.
The record indicates, and the trial court found, that Friedrich nonetheless operated the Heisserer farm quite successfully from 1983 to 1988, after Propst retired. The lessor's income from the operation of the farm increased steadily from 1983 to 1988. Including what are called "government assistance payments," the net income from the farm in 1983 was $3,808; in 1984, $4,797; in 1985, $6,712; in 1986, $7,436; in 1987, $10,108, and in 1988, $10,378. These figures, of course, represent one-third of the farm income.
During the time he was operating the farm, Friedrich improved it substantially. Specifically, the trial court found that Friedrich cleared, scraped and leveled the land, filled unproductive sloughs and combined small fields into larger, more productive fields, all to the benefit of the trust estate.
In late August or early September of 1987, within eight months of the time the successor trustees took over administration of the trust, the bank took the view that Friedrich should be required to pay his rent in cash. The basis of the bank's dissatisfaction with Friedrich's sharecrop agreement is not entirely clear; Mrs. Karen Grebing, the bank's assistant trust officer, testified that the bank's counsel recommended a written lease and that the farm be rented on a "cash basis, which is how [the bank] rents other farms that we administer the trust." On October 19, 1987, the bank's trust officer addressed a letter to Friedrich, which read as follows:
"On behalf of the Rosalinda Heisserer Trust you are hereby notified that your tenancy of the Heisserer Farm located approximately one mile south of Dutchtown, Missouri, Cape Girardeau County, is terminated at the end of the crop year 1987.
This notice is sent to you pursuant to the Missouri Revised Statutes before November 1, 1987. You are further notified not to sow any crops including winter wheat."
*868 Apparently some kind of discussion or communication preceded this letter, for in another letter dated October 19, 1987, the bank advised Friedrich it "would again" outline "the terms of the proposed lease on the Heisserer Farm." The bank proposed, among other things, that Friedrich execute a three-year lease; that in the event of a flood the lessee would assume the loss but cash rent would still be payable; that the rent per acre would be $80, and this figure was considered to be a concession to Friedrich. Friedrich was instructed to reply in writing. Friedrich replied through his attorney, in effect stating that he considered the bank's action to be in excess of its authority, and suggesting a conference of the trustees.
Thereafter, the trustees held several meetings. The minutes of several conferences were received in evidence as defendant's exhibit L. The trial court accurately found that the conferences reflect a continuing dispute among the trustees and their attorneys concerning the proper construction of the trust instrument. The minutes of a meeting held November 25, 1987 show that Friedrich indicated he would be interested in buying the farm at a "fair market price." The minutes of which we are speaking do not reflect any agreement on a method by which to determine the fair market value of the farm nor any agreement upon the mechanics of a sale of the farm. It was agreed on November 25, 1987 that Friedrich would continue to operate the farm on a sharecrop basis. According to Mrs. Grebing, the trustees disagreed as to the method by which the best price could be obtained. It was agreed that Friedrich's lease would be renegotiated for the 1989 crop year.
On July 29, 1988, the trustees met but could not agree on the terms of a prospective lease of the Heisserer farm; it was determined that the Probate Division of the Circuit Court should decide the matter in order to protect the trustees. On September 2, 1988, the bank and Spinks filed a petition to construe the trust. This petition recites, among other things, that none of the beneficiaries wishes to sell the Heisserer farm. Nevertheless, on October 20, 1988, the bank and Spinks notified Friedrich of termination of his tenancy of the farm. This decision to terminate Friedrich's tenancy was not submitted to a vote of the trustees at any time.
On December 7, 1988, a meeting was called by the bank and Spinks to discuss the sale of the farm at auction. A resolution was made to open sealed bids which had been solicited and received by the bank. The resolution generally provided that each bidder would be given the opportunity to raise his bid and that Friedrich would have the opportunity to match the highest bid. Bidding instructions were also incorporated into the resolution; it was provided that Friedrich would have a right of first refusal, and if he refused to complete the sale any contract to purchase the farm would be subject to the approval of the court. Friedrich did not sign this resolution, but a sale to one Earl Aufdenberg (through his and his wife's revocable trusts) was executed, subject to the approval of the court. The action which we review was tried on February 21, 1989. Other facts will be noticed in the course of the opinion.
Preliminarily, we have had to inquire into the jurisdiction of the trial court because if the trial court had no jurisdiction, this court has none. In re Estate of Lloyd, 676 S.W.2d 889, 890[1] (Mo.App. 1984); Hart v. Board of Adjustment of the City of Marshall, 616 S.W.2d 111, 113 (Mo. App.1981). Present § 472.020 confides jurisdiction of the estates of incapacitated persons and concurrent, if not exclusive, jurisdiction of the administration of inter vivos trusts to the Probate Division. See F. Hanna and J. Borron, 5 Missouri Practice, Probate Law and Practice § 489, pp. 540-41 (1988). Although the piecemeal revision of the Probate Code has tended to obscure the General Assembly's intent, we conclude the Probate Division had the authority to construe the Heisserer trust instrument. Having *869 said as much, we are obliged to consider whether the plaintiffs, who brought the action as trustees, are persons aggrieved within the intent of § 472.160.1.
In the main, the order and judgment appealed from determines and delineates the duties of the trustees. In general, our courts have held that an executor, administrator or trustee is not aggrieved by a decree or judgment determining his duty and the rights of the beneficiaries, or both, and so has no such interest as will support an appeal, inasmuch as he is protected by the decree. State ex rel. St. Louis Union Trust Co. v. Sartorius, 350 Mo. 46, 55, 164 S.W.2d 356, 358[1, 2] (banc 1942); Garrison v. Garrison, 354 Mo. 62, 65, 188 S.W.2d 644, 645 (1945); Columbia Union Nat. Bank & Trust Co. v. Bundschu, 641 S.W.2d 864, 879 (Mo.App.1982); Annotation, Right of trustee of express trust to appeal from order or decree not affecting his own personal interest, 6 A.L. R.2d 147, 149-150 § 3 (1949). When the administration of the trust is affected, however, a trustee is affected by the judgment in his official capacity, is aggrieved, and therefore may appeal. Columbia Union Nat. Bank & Trust Co. v. Bundschu, 641 S.W.2d at 878 n. 10; In re Estate of Hill, 435 S.W.2d 722, 724[4,5] (Mo.App.1968). The order and judgment appealed from in this case directly affects the administration of the trust, at least the operation of a farm which constitutes one-fourth of the corpus of the trust. We conclude that the plaintiffs are "aggrieved" within the meaning of § 472.160.1.
In this court, the appellant plaintiffs have briefed and argued three assignments of error. Their first point, as stated, is that "the trial court erred in finding that Rosalinda Heisserer's intent under the terms of her trust prohibited the sale of the Zeno Heisserer farm and in allowing [Friedrich] to choose the payment terms of his lease in that (A) the overriding purpose of the trust, as expressly provided by its language, was to provide for the needs of Rosalinda and her mentally incapacitated daughter, Cathrine and (B) [Friedrich's] interest was contingent, unvested and not subject to special protection because of the revocable nature of the trust."
The defendant has answered this point by asserting that the trial court did not err in denying the plaintiffs' request to sell the farm because immediate sale of the farm is prohibited by the terms of the trust in that the evidence viewed most favorably to the result reached establishes that: (1) the settlor intended for Friedrich to continue farming the Heisserer farm, if he chose to do so, until such time as it might become necessary to sell the farm to provide funds for the support of the settlor and her daughter, (2) absent such need, the settlor intended that Friedrich have the option to continue farming, and (3) there is no need to sell the Heisserer farm at this time. Further, the defendant argues, there was no error in allowing him to continue operating the farm either as a sharecropper or as a tenant, because the evidence viewed most favorably to the result reached indicates that the settlor wanted the defendant to continue operating her farm as a sharecropper, and in any event the cash rent fixed by the court as an alternative was fair and reasonable.
At this point, we should observe that the trial court's judgment is based on findings of fact and conclusions of law which, although they were not correctly requested, nevertheless form a proper basis for the assignment of error and for review on appeal. Graves v. Stewart, 642 S.W.2d 649, 651[3] (Mo. banc 1982); Liebelt v. Commerce Bank of Springfield, 703 S.W.2d 77, 78 (Mo.App.1985); Lohrmann v. Carter, 657 S.W.2d 372, 376 (Mo.App.1983). And, of course, the scope of our review is clearly fixed by Murphy v. Carron, 536 S.W.2d 30, 32[1-3] (Mo. banc 1976), which requires us to affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. We may set the judgment aside on the ground *870 that it is against the weight of the evidence only if a review of the entire record generates a firm belief that the judgment or decree is wrong.
Our first inquiry, as noted, is whether the trustees have unlimited discretion to sell the Heisserer farm without approval of the Probate Division. The plaintiffs argue that the overriding purpose of the trust is to provide for the needs of the settlor and her daughter, and they are "authorized and empowered to do whatever it takes" to provide for their needs. Citing Magruder v. Magruder, 525 S.W.2d 400 (Mo.App.1975), three provisions of the trust instrument and two statutes, §§ 456.520.3(7) and 456.540.1, the plaintiffs assert that the power of sale vested in the trustees is "clear, broad, expansive, sweeping, unfettered, unlimited, and unrestricted."
As a general rule it may be said that to the extent to which the trustee has discretion, the courts will not control the exercise of that discretion as long as the trustee does not abuse it. III A. Scott, The Law of Trusts § 187, p. 14 (Fratcher ed., 1988).[3] As our courts have put the matter, when a settlor vests sole discretion in a matter in a trustee, and supplies no objective standard by which to evaluate the reasonableness of his conduct, a court must not interfere unless the trustee, in exercising his power, wilfully abuses his discretion or acts arbitrarily, fraudulently, dishonestly or with an improper motive. First National Bank of Kansas City v. Hyde, 363 S.W.2d 647, 655 (Mo.1962); American Cancer Society, St. Louis Division v. Hammerstein, 631 S.W.2d 858, 863 (Mo. App.1981). See also Restatement (Second) of Trusts § 187 (1959). When, however, there is a standard by which the reasonableness of the trustee's judgment can be tested, the court will control the trustee in the exercise of a power when he acts beyond the bounds of a reasonable judgment. This principle is applicable when, by the terms of the trust instrument, the trustee is directed to pay so much of the income or principal of the trust estate to a beneficiary as is, in the opinion of the trustee, necessary for his support, or maintenance, or comfort. In such case, the court will control the trustee if he acts beyond the bounds of a reasonable judgment. III Scott, § 187.2 p. 32-34.
The specific language cited to the proposition that the trustees are given "absolute discretion" to sell the farm for the benefit of the settlor and her daughter is found in Article I, paragraph 3, and Article III, paragraph 1, of the trust instrument.
Article I, paragraph 3, of the trust instrument provides as follows:
"3. The Trustee under the provisions of paragraph 2, shall distribute for my benefit so much of the income and principal of this trust as is desirable for myself, my daughter, Cathrine Regina's maintenance, support, general welfare, and health taking into consideration all resources known to the Trustee to be available for me. The Trustee shall add to the principal any income not so applied for such purposes." (Emphasis supplied.)
Article III, paragraph 1, of the trust indenture provides as follows:
"1. If my daughter, Cathrine Regina, born December 3, 1933 survives me, the Trustee shall distribute as often as necessary whatever may be necessary from the income and principal of the trust estate for her benefit for her natural life. The trustee is directed to provide for the support, maintenance, health, shelter and other necessities for her. The Trustees are hereby advised that Cathrine is unable to care for herself or her property and would be considered an infant in the eyes of the law. It is my intention that Cathrine be given the attention, *871 love and care as that which I have given her as far as possible. In particular, Gary Spinks and his wife Phyllis may care for her and I have named them as guardians of the person for Cathrine in my Last Will and Testament. The Trustees are directed to expend whatever sums of income and principal are necessary to fulfill the purposes of this trust up to the whole of the trust income and estate, if necessary." (Emphasis supplied.)
What, then, is the measure of the trustee's discretion under the trust provisions just quoted? Paragraph 3 of Article I requires the trustees to distribute so much of the income and principal of the trust as is "desirable" for the maintenance, support, general welfare and health of the settlor and her daughter. The operative word is "desirable." The adjective does not appear to be a word of art. Everyday, pedestrian dictionaries indicate the word "desirable" is synonymous with the word "advisable." Webster's Ninth New Collegiate Dictionary p. 344 (1983). In our view, providing that which is "desirable" is indistinguishable from providing that which is reasonably necessary, taking in consideration all resources known to the trustee to be available. Article III, paragraph 1, authorizes expenditure of "whatever may be necessary" to provide for the support, maintenance, health and shelter of the settlor's daughter. We conclude that the limitation imposed on the trustees' discretion is that of reasonable necessity. They are remitted to the exercise of a reasonable judgment, considering the resources available to the settlor and her daughter.
In determining whether the trustees have, or would, exceed their discretion if they sold the farm at this time, we must apply a yardstick which is appropriate in the circumstances. The test is whether the evidence shows that the sale was, in the circumstances, reasonably necessary for the maintenance and support of the settlor and her daughter. See Gent v. Thomas, 363 Mo. 528, 536, 252 S.W.2d 345, 349-50[4, 5] (1952). Otherwise put, a power to sell when necessary for the support, maintenance and welfare of another is contingent upon the existence of such necessity. Citizens' Bank of Lancaster v. Foglesong, 326 Mo. 581, 589, 31 S.W.2d 778, 781 (1930). The question whether a state of fact existed making the sale reasonably necessary or "desirable" was a matter for judicial determination. Cook v. Higgins, 290 Mo. 402, 421, 235 S.W. 807, 812 (banc 1921); Gent v. Thomas, 363 Mo. at 536, 252 S.W.2d at 350; Scheidt v. Crecelius, 94 Mo. 322, 7 S.W. 412 (1888). The plaintiffs argue that powers conferred by a trust indenture are so dissimilar to testamentary powers that cases involving the exercise of testamentary powers are not persuasive in this case. We reject this argument, although we believe that the nature and extent of a discretionary power conferred upon a trustee depends in considerable part upon the settlor's expressed intent. It is a familiarif not very specificprinciple that the paramount rule of construction of a trust provision is that the settlor's intent is controlling and his intention is to be ascertained primarily from the trust instrument as a whole. First National Bank of Kansas City v. Hyde, 363 S.W.2d at 652[1]; Tidrow v. Director, Missouri State Division of Family Services, 688 S.W.2d 9, 12[1] (Mo. App.1985).
In this case, we need not search for implied powers of sale. Paragraph 7 of Article VII of the trust instrument provides that the trustee (trustees) shall have the power:
"7. To sell at public or private sale, exchange, lease, for any period of time, mortgage or pledge any property, real or personal, and to borrow money on such terms and conditions as the Trustee shall determine, any of the assets of the trust estate."
The power of sale is conferred upon the trustees as a discretionary power. Nevertheless, a trust asset may not be sold pursuant to a general power of sale contained in a trust instrument when such a sale *872 would defeat the express purpose of the trust. St. Louis Union Trust Company v. Brug, 558 S.W.2d 375, 376-77[4] (Mo.App. 1977).
The plaintiffs have shown no very convincing need to sell the Heisserer farm. Their trial theory, by which they are bound in this court, was that the settlor would shortly require supervisory care in a rest home, and the proceeds of the sale would provide the means with which to defray the expense of that care. There was evidence that one prospective purchaser, Earl Aufdenberg, was ready, willing and able to pay $247,000 in cash for the Heisserer farm. We are assured that $247,000 invested at ten percent annual interest would yield the trust income of $24,700 per year. One witness, an employee of the bank, testified that if the settlor and her daughter were accepted as residents of "the Lutheran nursing home in Cape" the cost of their care would be "around $62 a day each." This would require an annual expenditure of $45,260.
There are several difficulties with this argument. To begin with, the record is totally devoid of any medical evidence indicating the settlor will need custodial care in the very near future. Plaintiff Spinks, the settlor's nephew, testified that she was often confused and disoriented, and Cathrine appears to be severely retarded, but no in-home care seems to have been investigated and plaintiffs' argument that the settlor will shortly require $42,000 annually to defray the expense of care in a nursing home is not established by the evidence. Further, if one accepts the bank's evidence that there is a prudent investment which would yield a return of ten percent annually, the assets of the trust are sufficient to provide nursing home care for the settlor and Cathrine. The trial court found that the trust presently has $550,000 in liquid assets available. It further found that if those assets were earning nine or ten percent per annum, the income available to the trust would be $49,500 or $55,000, which, added to the farm income, would certainly be sufficient to pay the cost of custodial care for the settlor and her daughter. Other arguments advanced by the plaintiffs might be addressed, but the trial court specifically found there was no necessity to sell the farm at this time to produce income, and we agree. Contrary to their view, neither the statutes, in particular § 456.520, nor the express terms of the trust indenture, vest the trustees with the unlimited, unfettered discretion for which they contend.
The plaintiffs further argue, in this connection, that defendant Friedrich's interest is "contingent, unvested and not subject to special protection because of the revocable nature of the trust." Friedrich, on the other hand, argues that the trust provisions in this case are analogous to those considered in St. Louis Union Trust Co. v. Brug, 558 S.W.2d 375, wherein the court ruled, in effect, that a trustee's power to sell or otherwise dispose of trust property under a provision granting the trustee general powers of sale, may be limited by specific instruction concerning a particular tract of land. In the Brug case, a testamentary trustee requested a judicial determination of his power to sell several parcels of realty. Two of the three parcels produced no income and a third produced only minimal income. The trustee was of the opinion that it would be in the best interest of the estate to sell the realty and invest the proceeds. The testatrix had made specific provisions for distribution of the income produced by the tracts in question and for the ultimate disposition of the property upon the death of specified beneficiaries. The court held that inasmuch as the testatrix had made unequivocal provisions as to the distribution of the net income and use of the realty in question, she did not intend to grant the trustee the power to sell the three tracts of real estate. St. Louis Union Trust Co. v. Brug, 558 S.W.2d at 377.
The plaintiffs' argument that the settlor's provisions for Friedrich are ambiguous is strained and tenuous, as is their *873 argument that his interest is so remotely contingent as to be unworthy of protection. A trust instrument may contain a general power of sale and except particular property from that power. See, e.g., Barnhouse v. Lewis, 250 Iowa 85, 93 N.W.2d 117, 120[3] (1958); Restatement (Second) of Trusts § 186, comment d. p. 401; III Scott, § 190.1, p. 96. This is not to say, and we do not hold, that if a sale of the farm were necessary to enable the trustee to carry out the purpose of the trust, the Probate Division could not authorize the sale. If circumstances not anticipated by the settlor develop, a sale of the farm could be authorized by the court in order to carry out the primary purpose of the trust, which is to provide for the health and welfare of the settlor and her daughter. III Scott, § 190.4, pp. 105-106. However, no such circumstances now exist. To state our conclusion, we find that the trust instrument, reasonably construed, excepts the farm from the trustees' express power of sale unless it appears to be reasonably necessary to sell the farm to carry out the purpose of the trust. On this record, no such reasonable necessity appears.
A further argument advanced by the plaintiffs is that the trial court erred in ordering that Friedrich be allowed to continue to rent the Heisserer farm either as a sharecropper or as a cash tenant, at his election. The court held that Friedrich might either: (a) operate the Heisserer farm on a crop rental basis, the trust estate to receive one-third of the proceeds of the crops, Friedrich to receive two-thirds of the proceeds and to pay all the expenses of farming except one-third of the necessary herbicides, or (b) in the alternative, operate the farm on a cash rental basis at the rate of $65 per crop acre. The plaintiffs argue that this finding is not supported by the evidence and ignores "undisputed" evidence that a reasonable cash rent for the Heisserer farm would be at least $80 per acre.
This argument ignores a plethora of evidence concerning the fair rent which should be paid for the Heisserer farm. Mr. Propst, who operated the Heisserer farm for many years, testified that no farmer could operate the Heisserer farm profitably if he was obliged to pay $80 per crop acre as rent. Mr. James Reitzel, a farmer who was familiar with the Heisserer property, testified that he was renting a farm, a 280-acre tract less productive than the Heisserer farm, for $50 cash rent per acre. Friedrich himself testified that he was willing to pay cash rent in the amount of $60 to $65 per acre, but believed he could not operate the Heisserer farm profitably if he was required to pay $80 per crop acre in cash. We find no error in the trial court's ruling that Friedrich should be allowed to continue operating the farm on a one-third/two-thirds crop share basis or for $65 per crop acre. Plaintiffs' argument is entirely without substance.
The plaintiffs' second point, slightly paraphrased, is that the trial court erred in finding that defendant Friedrich had not breached his fiduciary duty and in allowing him to retain his position as trustee. This argument is not properly before us for review. We have examined the pleadings, and although we find a conclusional allegation that "Friedrich has breached his fiduciary duty to Rosalinda Heisserer," we find no allegation that he should be removed. The plaintiffs asked for a declaration that Friedrich had no right to purchase the farm during the lives of the settlor and her daughter, and a declaration that he had no right to rent the farm except upon "terms and conditions deemed advisable by a majority of the trustees and reduced to a written lease," but neither the pleadings nor the proof ask for his removal as trustee. The powers of a court of equity, though broad, are limited to the claim for relief and issues made by the pleadings. Mills v. Keasler, 395 S.W.2d 111, 118[9-12] (Mo.1965); Murphy v. Timber Trace Ass'n, 779 S.W.2d 603, 607 (Mo.App.1989). It is true that in their pleadings plaintiffs complained that Friedrich's operation of the farm creates a "conflict *874 of interest," but we find no direct contention made during the trial that Friedrich should be removed as trustee. The trial court found that if there was a conflict between Friedrich's position as tenant of the Heisserer farm and the discharge of his duties as trustee, that conflict was created and authorized by the trust instrument. We believe the trial court's conclusion is correct. This case does not present a situation in which a co-trustee is given a discretionary power to make dispositions of the income of the trust to himself; the trust instrument merely provides that one of several beneficiaries shall be one of several trustees, and in such case there is no difficulty as to the creation or continuance of the trust. II Scott, § 99.2, p. 51-52. The law does not require a trustee to be totally disinterested and does not mandate his automatic removal if he acts with resultant advantage to himself. American Cancer Society, St. Louis Division v. Hammerstein, 631 S.W.2d at 863. We reiterate, however, that we find no indication that the trial court was asked to remove Friedrich as trustee because of any breach of fiduciary duty. An appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. Lincoln Credit Co. v. Peach, 636 S.W.2d 31, 36[12] (Mo. banc 1982), appeal dismissed, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983); Dixon v. Bradsher, 779 S.W.2d 727, 733 (Mo.App.1989); ASARCO, Inc. v. McNeill, 750 S.W.2d 122, 129 (Mo.App.1988). Inasmuch as the trial court was not asked to remove Friedrich as a trustee, the plaintiffs may not now complain that he was not removed.
Plaintiffs' final point is that the trial court erred in awarding Friedrich attorney's fees to be paid by the trust; specifically, the court ordered that Friedrich be reimbursed from the trust estate for attorney's fees and expenses incurred in this action in the amount of $7,979.14. The plaintiffs argue that Friedrich's primary objective was to protect his personal interest and that the legal arguments advanced in his behalf are frivolous and capricious; therefore, plaintiffs argue, Friedrich was not entitled to an allowance of attorney's fees.
We find no merit in this argument. A trustee who defends an action for the benefit of the trust may, with propriety, incur such costs, the expense of an attorney included, as are reasonable for the purpose. In re Coats Trust, 581 S.W.2d 392, 398 (Mo.App.1979); Coffman v. Gates, 110 Mo.App. 475, 488-89, 85 S.W. 657, 660-61 (1904); III Scott, § 188.4, p. 62. Friedrich's actions were, in our view, designed to enforce the provisions of the trust and his actions appear to have been bona fide. The allowance of Friedrich's attorney's fees as an expense of the estate was proper and entirely appropriate in this case.
We find no error materially affecting the merits of the action in any respect properly briefed in this court. Accordingly the judgment is in all respects affirmed.
FLANIGAN, P.J., and MAUS, J., concur.
SHRUM, J., not participating because not a member of the court when case was submitted.
NOTES
[1] Which provides, in material part, that "2. An adjudication of incapacity or disability does operate to impose upon the ward or protectee all legal disabilities provided by law, except to the extent specified in the order of adjudication...." (Emphasis added.) The adjudication of disability provides only that the settlor was to have control of a checking account not to exceed $1,000 and was to be permitted to live with her daughter Cathrine as long as she was physically able to do so.

References to statutes and rules are to RSMo 1986 and Missouri Rules of Court (20th ed. 1989) except where otherwise specifically noted.
[2] Article I, paragraph 2, of the trust instrument provides that "[s]hould I become incapacitated or disabled Gary Spinks, Harl Friedrich and the Jackson Exchange Bank & Trust Company shall become Trustee in my place. This appointment shall terminate on my death except as otherwise provided in this trust."
[3] Hereinafter Scoff. We acknowledge that we have been guided by the views expressed by Professor William Fratcher in his prodigious revision of the late Professor Austin Scott's classic work on the law of trusts.