**Terrance O'RILEY and Gerald O'Riley, Appellants,**

v.

**U.S. BANK, N.A., Respondent.**

**No. WD 75307.**

Missouri Court of Appeals,
Western District.

Sept. 17, 2013.

Motion for Transfer to the Supreme
Court Denied Oct. 29, 2013.

Michael R. Ong, for Appellants.

Mark M. Iba, Kansas City, for Respondent.

Before Division I: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and ANTHONY REX GABBERT, Judge.

VICTOR C. HOWARD, Judge.

Terrance O'Riley and Gerald O'Riley (Beneficiaries) appeal the judgment of the trial court in favor of U.S. Bank, N.A. (Trustee) on their claims for breach of fiduciary duty. The judgment is affirmed.

## Factual and Procedural Background

Donald and Arlene O'Riley married in 1956. They had two children, Terrance and Gerald.[1] In January 1978, Donald, as Grantor, executed a Trust Agreement establishing a revocable trust and naming American National Bank, U.S. Bank's predecessor, as the trustee. Donald passed away in March 1982. Pursuant to the Trust Agreement, the trustee divided the trust estate into two shares upon Donald's death—a Marital Trust and a Non–Marital Trust. The Marital Trust "consist[ed] only of assets that qualify for the marital deduction under federal estate tax law." It directed the trustee to pay Arlene all of the net income of the Marital Trust and also distribute to her part or all of the principal of the trust as she may request. The underlying lawsuit did not involve the administration or distribution of the Marital Trust.

The Non–Marital Trust directed the trustee to distribute to Arlene so much or all of the net income of the trust as it deemed advisable to provide for her care, support, maintenance and welfare. It also directed the trustee to distribute to any one or more of Donald's descendants so much or all of the net income of the trust not paid to Arlene as it deemed advisable to provide for their respective care, support, maintenance, education and welfare.

The Trust Agreement also authorized the trustee to "invade" and pay to the Grantor, his wife, or his children from the principal of either trust estate if it determined that the aggregate of the income and principal payable under the trusts and the funds available from all other sources were insufficient to provide adequately for their care, support, maintenance, education, comfort and medical or other attention or emergency.

Finally, the Non–Marital Trust directed the trustee to distribute the remainder of the trust estate to Grantor's then living descendants upon the death of Arlene.

Once fully funded after Donald's death, the Non–Marital Trust had an account balance of $369,604.92. Arlene made annual requests to Trustee for all of the income generated from the Non–Marital Trust to help cover her living expenses. Trustee approved Arlene's requests and distributed the income from the Non–Marital Trust until 2007 when it ceased serving as the trustee. Terrance made occasional requests for income distributions from the Non–Marital Trust in 1989, 1991, and 2000 to cover living expenses, health insurance, and an unpaid x-ray bill. Trustee approved one distribution to Terrance of $600 in 1989 and denied the other requests. Gerald never made any requests for distributions from the Non–Marital Trust. In 1987, Arlene requested a distribution of approximately $9200 from the principal of the Non–Marital Trust to reimburse her for amounts she provided to Terrance and Gerald for college expenses, auto insurance, and divorce-related expenses. Trustee denied this request by Arlene.

Between 1983 and 1995, Trustee invested the Non–Marital Trust assets in bonds, bond funds, certificates of deposit, and other fixed income assets. The Trust held no

1. For brevity and clarity, the members of the O'Riley family will often be referred to by their first names. No disrespect is intended.

equities, common stock, or mutual funds during this period. In 1996, approximately 14% of the Non–Marital Trust assets were held in stock, and by 1999, over 40% of the Trust assets were held in stock. And between 2003 and 2007, Trustee invested 45–60% of the Non–Marital Trust assets in equities. At the end of 2007 when Trustee ceased serving as trustee of the Non–Marital Trust, the Trust had a balance of $413,405.46.

In May 2010, Beneficiaries filed their first amended petition against Trustee seeking compensatory and punitive damages and attorney's fees for breach of duty of impartiality and breach of duty to properly invest trust assets. They alleged that Trustee refused to make any distributions to them and favored the interests of Arlene over theirs and failed to provide them with account statements to advise them of the nature and extent of their interests in the Non–Marital Trust. They also alleged that Trustee invested solely in cash accounts or income producing bond funds but not in equity investments and did not sufficiently diversify the assets resulting in no appreciation of the Non–Marital Trust assets.

Following a bench trial, the trial court entered judgment in favor of Trustee on all counts. Thereafter, Trustee filed a motion for an award of attorney's fees, costs, and expenses under section 456.10–1004, RSMo Cum.Supp.2012. They sought recovery of $379,849.20 in attorney's fees and $81,867.73 in expenses and costs incurred in defending against Beneficiaries' claims. The trial court entered its first amended judgment in favor of Trustee on all counts and granted Trustee's motion for award of attorney's fees, costs, and expenses in the amount of $257,017.73 to be paid by Beneficiaries and from their interests in the Non–Marital Trust.

This appeal by Beneficiaries followed.

## Standard of Review

■ In a bench-tried case, the judgment of the trial court will be affirmed on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012); *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Claims that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involve review of the trial court's factual determinations. *Pearson*, 367 S.W.3d at 43. A reviewing court will overturn a trial court's judgment under these fact-based standards of review only when the court has a firm belief that the judgment is wrong. *Id.* On the other hand, a claim that the judgment erroneously declares or applies the law involves review of the propriety of the trial court's construction and application of the law. *Id.*

An appellate court reviews questions of law *de novo* without deference to the trial court's conclusions. *Id.* at 43–44. In reviewing questions of fact, the appellate court defers to the trial court's assessment of the evidence if any facts relevant to an issue are contested. *Id.* at 44. This is so because the trial court is in a better position not only to judge the credibility of witnesses directly but also their sincerity and character and other trial intangibles that may not be completely revealed by the record. *Id.* When evidence is contested, a trial court is free to disbelieve any, all, or none of the evidence. *Id.* " '[T]he appellate court's role is not to reevaluate testimony through its own perspective.' " *Id.* (quoting *White v. Dir. of Revenue*, 321 S.W.3d 298, 309 (Mo. banc 2010)). Where, as here, the parties did not request written findings of fact, the appellate court views

**406**

the facts in the light most favorable to the trial court's judgment. *Id.* at 52 (citing Rule 73.01).

"Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide." *Western Blue Print Co., LLC v. Roberts,* 367 S.W.3d 7, 15 (Mo. banc 2012)(citing *Scanwell Freight Express STL, Inc. v. Chan,* 162 S.W.3d 477, 481 (Mo. banc 2005)).

### Claims for Breach of Fiduciary Duties

In their first two points on appeal, Beneficiaries claim that the trial court's judgment erroneously applied the law in ruling that Trustee did not breach its duty of impartiality or its duty to properly invest trust assets. In making these arguments, Beneficiaries often focus solely on the facts favorable to them and ignore those that support the trial court's judgment. Of course, this court may not reweigh the evidence under the applicable standard of review.

■ In determining the meaning of trust provisions, the paramount rule of construction is that the grantor's intent is controlling and such intention must be ascertained primarily from the trust instrument as a whole. *First Nat'l Bank of Kansas City v. Hyde,* 363 S.W.2d 647, 652 (Mo.1962); *Betty G. Weldon Revocable Trust v. Weldon,* 231 S.W.3d 158, 173 (Mo. App. W.D.2007). A court must endeavor to ascertain the grantor's intent at the time of the creation of the trust. *Weldon,* 231 S.W.3d at 173. A grantor is presumed to know and intend the legal effect of the language he uses in the trust. *Id.* at 173–74. "Where the language used is clear and of well-defined force and meaning, it must stand as written and extrinsic evidence of what was intended in fact cannot be adduced to qualify, explain, enlarge, or contradict the language." *Hyde,* 363 S.W.2d

at 653. Unambiguous terms in a trust will be given effect, and a court will not attempt to rewrite an unambiguous trust under the guise of construction. *Weldon,* 231 S.W.3d at 174.

■■ Generally, where a grantor vests sole discretion of a matter in a trustee and supplies no objective standard by which to evaluate the reasonableness of its conduct, a court will not interfere in the exercise of that discretion unless the trustee willfully abuses its discretion or acts arbitrarily, fraudulently, dishonestly, or with an improper motive. *Hyde,* 363 S.W.2d at 655; *Weldon,* 231 S.W.3d at 174–75; *In re Heisserer,* 797 S.W.2d 864, 870 (Mo.App. S.D. 1990). *See also* RESTATEMENT (SECOND) OF TRUSTS § 187 (1959)("Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court, except to prevent an abuse by the trustee of his discretion."); and RESTATEMENT (THIRD) OF TRUSTS § 50(1)(2003) ("A discretionary power conferred upon the trustee to determine the benefits of a trust beneficiary is subject to judicial control only to prevent misinterpretation or abuse of the discretion by the trustee."). Where, however, a trust supplies a standard by which the reasonableness of the trustee's judgment can be tested, a court will control the trustee in the exercise of a power when it acts beyond the bounds of reasonable judgment. *Weldon,* 231 S.W.3d at 175; *Heisserer,* 797 S.W.2d at 870; RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. i. *See also* RESTATEMENT (THIRD) OF TRUSTS § 50 cmt. b ("Absent language of extended (e.g. 'absolute' or 'uncontrolled') discretion, a court will also intervene if it finds the payments made, or not made, to be unreasonable as a means of carrying out the trust provisions."). Likewise, the Missouri Uniform Trust Code directs the trustee to use good faith judgment when the trust

provides ascertainable standards: "Notwithstanding the use of such terms as 'absolute,' 'sole,' or 'uncontrolled,' in the exercise of discretion under an ascertainable standard, the trustee shall exercise such discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." § 456.9–814.1, RSMo Cum.Supp. 2012.

The Restatement (Second) of Trusts lists several factors that may be relevant in determining whether a trustee abuses its discretion in exercising or failing to exercise a power:

(1) the extent of the discretion conferred upon the trustee by the terms of the trust;

(2) the purposes of the trust;

(3) the nature of the power;

(4) the existence or non-existence, the definiteness or indefiniteness, of an external standard by which the reasonableness of the trustee's conduct can be judged;

(5) the motive of the trustee in exercising or refraining from exercising the power;

(6) the existence or non-existence of an interest in the trustee conflicting with that of the beneficiaries.

RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. d. Similarly, the Restatement (Third) of Trusts § 50(2) adds that whether a trustee's actions constitute an abuse of discretion "depend[s] on the terms of the discretion, including the proper construction of any accompanying standards, and on the settlor's purposes in granting the discretionary power and in creating the trust."

## Duty of Impartiality

In the first point addressed on appeal, Beneficiaries contend that the trial court erred in ruling in favor of Trustee on their claim for breach of impartiality. They assert that Trustee failed its fiduciary duty to exercise reasonable care, skill, and caution in attaining knowledge of the relevant circumstances pertaining to the exercise of its authority but instead acted as a result of arbitrary decisions favoring Arlene over them. Specifically, they claim that Trustee breached its duty to distribute the trust according to its terms and breached its duty to inform and report to them.

Beneficiaries first assert that Trustee breached its duty to distribute the trust according to its terms. They argue Trustee's discretionary authority to distribute trust assets was subject to a reasonableness test and that Trustee failed to use a reasonable process to make distribution decisions. Specifically, they contend that Trustee simply decided to distribute "all income-in all events" to Arlene and that the distributions were put on "auto pilot" in favor of Arlene. They argue that Trustee's distribution decisions were unreasonable because Trustee failed to examine and balance all of Arlene's and their needs and other resources before making distribution decisions.

Section 456.8–803, RSMo Cum.Supp. 2012, provides, "If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, giving due regard to the beneficiaries' respective interests." "The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." *Id.*, Uniform Trust Code Comment.[2]

2. "The official comments to the Uniform Trust Code (on which the Missouri Uniform

Trust Code is based), as well as drafters' comments to the MUTC as enacted, are contained

The Non–Marital Trust contained the following provisions for the distribution of net income, in pertinent part:

> While Grantor's said wife is living and is not remarried, the Trustee shall pay over to her so much or all of the net income of the trust as the Trustee, in its absolute discretion, deems advisable to provide for her care, support, maintenance and welfare; and, subject to the foregoing provisions in favor of Grantor's said wife as the preferred beneficiary, shall pay over to any one or more or all of Grantor's descendants living from time to time so much or all of the net income of the trust not paid to Grantor's wife as the Trustee, in its absolute discretion, deems advisable to provide for their respective care, support, maintenance, education and welfare.

> In exercising the foregoing discretion, the Trustee may consider all other sources of income available to each of the beneficiaries above designated and shall have the right, in its absolute discretion, to exclude any or all of them at any time and from time to time and to make unequal distributions among them. Any net income not so distributed by the Trustee during any calendar year shall be accumulated and added to the principal of the trust.

The Trust Agreement also provided the trustee with "the power of invasion" of the principal when it determined, in its sole judgment, that the aggregate of the income and principal payable under the trusts and the funds available from all other sources were insufficient to provide adequately for the Grantor, his wife, or his children's care, support, maintenance, education, comfort and medical or other attention or emergency. Specifically, the Trust Agreement directed:

> the Trustee may pay to or for the benefit of Grantor, Grantor's wife or other beneficiary from the principal of any trust estate created or then held for his or her benefit, such amounts as the Trustee, in its sole discretion, shall deem advisable for such purpose. Any payment made to Grantor's wife pursuant to the foregoing power shall be made from the Marital Trust, if sufficient, and, if not, from the Non–Marital Trust, but no payment shall be made from the Marital Trust which is not payable to Grantor's said wife or made for her sole use and benefit. The Grantor intends that the power of invasion herein conferred shall be exercised liberally by the Trustee, and that the interests of himself and his wife be preferred to the interests of other beneficiaries, and the Trustee's decision as to the propriety and amount of any payment shall be final and binding upon all beneficiaries hereunder.

Although the Trust Agreement in this case used the term "absolute discretion" and "sole discretion" regarding the trustees' discretionary powers to distribute income and principal, it also provided objective external standards with which to judge the reasonableness of the trustee's actions. Specifically, the Trust Agreement authorized the trustee to make distributions of income from the Non–Marital Trust to Arlene as it "deems advisable to provide for her care, support, maintenance and welfare." It further allowed the trustee to distribute income not paid to Arlene to Donald's descendants as it "deems advisable to provide for their respective care, support, maintenance, education and welfare." Additionally, the trustee was au-

in Chapter 456, Missouri Revised Statutes Including the Missouri Uniform Trust Code with the 2006 Technical Corrections, published by The Missouri Bar, Probate and Trust Committee." *Brams Trust # 2 v. Haydon*, 266 S.W.3d 307, 313 n. 6 (Mo.App. W.D.2008).

thorized to distribute principal to Arlene or to Donald's children if it determined that other funds were insufficient to provide adequately for their care, support, maintenance, education, comfort and medical or other attention or emergency. With these support standards, the reasonableness of the trustee's judgment can be tested, and a court will control the trustee if it acts beyond the bounds of reasonable judgment. *See Heisserer*, 797 S.W.2d at 870 (The principle that a court will control the trustee in the exercise of a power when he acts beyond the bounds of reasonable judgment is "applicable when, by the terms of the trust instrument, the trustee is directed to pay so much of the income or principal of the trust estate to a beneficiary as is, in the opinion of the trustee, necessary for his support, or maintenance, or comfort.").

The language used in and with these support standards further defined the trustee's discretionary distribution powers. First, the terms of the Trust Agreement revealed that its purpose was first to provide for Donald's widow, Arlene. The provisions for the distribution of net income from the Non–Marital Trust designated Arlene as the "preferred beneficiary." Income distributions to Donald's sons were specifically limited to any income left over after distributions were made to Arlene. Similarly, in conferring to the trustee the power to "invade" the principal, the Trust Agreement provided that "the interests of [the Grantor] and his wife be preferred to the interests of other beneficiaries."

Secondly, the term "advisable" in the support provisions of the Trust Agreement has been found to be synonymous with the term "desirable," and providing that which is "desirable" has been found to mean providing that which is "reasonably necessary." *Id.* at 871. Additionally, words such as "support" and "maintenance" nor-

mally imply intent to support the beneficiary's accustomed standard of living or station in life "even without an express reference to the beneficiary's customary lifestyle." RESTATEMENT (THIRD) OF TRUSTS § 50 cmt. d(2). In fact,

> [u]nder the usual construction of a support standard it would not be reasonable, or even a result contemplated by the settlor, for the trustee to provide only bare essentials for a beneficiary who had enjoyed a relatively comfortable lifestyle. (This is so even though the discretionary power is couched in terms of amounts the trustee considers 'necessary' for the beneficiary's support.) The standard ordinarily entitles a beneficiary to distributions sufficient for accustomed living expenses, extending to such items as regular mortgage payments, property taxes, suitable health insurance or care, existing programs of life and property insurance, and continuation of accustomed patterns of vacation and of charitable and family giving.

*Id.* The term "welfare" tends to "authorize discretionary expenditures that fall beyond the usual scope of a purely support-related standard." *Id.* at cmt. d(3).

Finally, the Non–Marital Trust addressed the significance of a beneficiary's other resources when the trustee is determining income distributions to be made to beneficiaries under the support standards. The Restatement (Third) of Trusts provides that if the trust instrument does not address whether the trustee should consider a beneficiary's other resources in exercising its discretionary distribution powers, the "general rule of construction" presumes that the trustee is to consider the other resources but has some discretion in the matter. RESTATEMENT (THIRD) OF TRUSTS § 50 cmt. e. Such presumption does not apply, however, "when the settlor expresses a different intent or if the pre-

sumption is contrary to the purposes or terms of the trust as interpreted in light of the circumstances and other evidence of the settlor's intention." *Id.* In this case, Donald expressed a different intent than requiring the trustee to consider the beneficiaries' other resources. He provided that in determining the income distributions to be made to beneficiaries from the Non–Marital Trust, the trustee *may* consider all other sources of income available to each of the beneficiaries. He further provided that the trustee "shall have the right, in its absolute discretion, to exclude any or all of them at any time and from time to time and to make unequal distributions among them." Thus, the trustee was permitted, but not required, to consider other resources in exercising its discretionary distribution powers.

Thus, under these terms and purposes of the Trust Agreement, Trustee had the discretion to distribute to Arlene income that was reasonably necessary to support her standard of living. If any income remained after distributions to Arlene, Trustee had discretion to distribute income to Terrance and Gerald. In exercising its discretionary distribution powers, Trustee could, but was not required to, consider the beneficiaries' other resources.

Substantial evidence was presented that Trustee's distribution decisions were not beyond the bounds of reasonable judgment. William Mytton, the trust officer assigned to the Non–Marital Trust testified that Trustee considered Arlene's financial circumstances—both her needs and other resources—before making income distributions. The record showed that Arlene made annual requests for income from the Non–Marital Trust. With her requests, she provided Trustee a financial report showing her income from all sources and expenses for the year. Mr. Mytton would then review Arlene's finan-

cial position considering Donald and Arlene's standard of living prior to Donald's death. Specifically, Arlene's expense information showed expenses related to her country club membership, lake house, boat, trips, charitable donations to her church, and financial assistance to her sons, Terrance and Gerald. These expenses were consistent with the expenses that Arlene and Donald had prior to Donald's death. Furthermore, evidence showed that the income that Arlene was receiving, including the income from the Marital and Non–Marital Trusts, was lower than the income she and Donald enjoyed prior to Donald's death. And even though her household income was lower, Arlene found herself with additional expenses that she did not have while her husband was living, such as automobile expenses and health insurance premiums that had been paid by Donald's business before his death.

Mr. Mytton further testified that based on his evaluation of the information provided by Arlene and the terms and purposes of the Trust Agreement, he made at least annual recommendations to the trust management committee concerning how the income should be distributed. The trust management committee then reviewed Arlene's financial information and the trust officer's recommendations. The committee often asked questions and required follow-up information before making its distribution decision, which did not always follow Mr. Mytton's recommendations. In addition, internal and external auditors and bank examiners regularly reviewed trusts administered by Trustee.

Beneficiaries argue that evidence was presented that Trustee did not always seek information directly from them concerning their financial circumstances prior to making income distributions to their mother. The Non–Marital Trust did not,

however, require Trustee to do so. Trustee was not required to balance the needs of Arlene against the needs of her sons prior to making distributions to her. In other words, Trustee was not required to distribute income to the beneficiary who needed it most. To the contrary, the terms of the Non–Marital Trust provided that Arlene was the "preferred beneficiary" and that Trustee was to pay to Arlene "so much or all" of the income that it "deem[ed] advisable to provide for her care, support, maintenance and welfare." Trustee was not permitted to distribute income to Beneficiaries unless income remained after distributions were made to Arlene. Trustee's conduct in not necessarily looking at the needs of Beneficiaries once it determined that Arlene was entitled to all of the income since there would not be any income available for them was reasonable under the terms and purposes of the Trust Agreement.

Moreover, the evidence showed that Trustee was not without knowledge concerning the financial and other circumstances of Beneficiaries. Trustee was aware that Terrance suffered from alcohol and drug abuse and was in and out of treatment, was irresponsible with money, and was often unemployed. As with Arlene's requests for income, Trustee investigated distribution requests from Terrance and often asked for additional documentation to substantiate the requests. Mr. Mytton testified that based on his investigations of Terrance's requests, he had concerns that distributions from the Non–Marital Trust would not be used as Terrance represented and was unable to confirm much of the information provided by Terrance. In addition to information received directly from Terrance, Trustee also received information concerning Terrance and Gerald from Arlene and Arlene's financial advisors. Arlene's financial information showed that she was providing

significant financial support to Terrance and Gerald during the relevant time period. That information showed that between 1986 and 2007, Arlene provided her sons approximately $117,000 in financial assistance to cover a variety of expenses such as college tuition, housing, child support obligations, health insurance, and car payments. She gave them another $25,000 in monetary gifts during that time.

A finding that Trustee's distribution decisions were reasonable was further supported by the testimony of Trustee's trust expert, Retired Judge John Borron, who reviewed the Trust Agreement, the Non–Marital Trust statements, the O'Riley estate plan, communications between Trustee, the beneficiaries, and advisors, and the testimony of Arlene, Beneficiaries, Mr. Mytton, and Sharon Evers, who served as an investment officer and eventually as manager of the trust department. Judge Borron opined that the distributions made from the Non–Marital Trust were reasonable in light of the purpose of the Trust and that Trustee acted impartially.

■ Substantial evidence demonstrated that Trustee's distribution decisions were the product of a thoughtful evaluation and review process and consistent with the terms of the Non–Marital Trust and Missouri law. Trustee's distribution decisions were not beyond the bounds of reasonable judgment and were not a result of the failure to treat the beneficiaries impartially but a reasonable exercise of Trustee's discretion in light of the preference it was required to give to Arlene and the information available to it.

Next, Beneficiaries claim that Trustee breached its duty under the Trust Agreement and *Engelsmann v. Holekamp*, 402 S.W.2d 382 (Mo.1966), to inform and report to them by failing to provide Terrance with accountings for the first several years

of the Non–Marital Trust's existence and failing to provide Gerald with accountings until 2006.

Beneficiaries' argument, however, ignores evidence that both Terrance and Gerald were receiving account statements by at least 1988. Terrance admitted that he began receiving statements in 1988. Arlene testified that Gerald's statements were sent to her address while he was in school. She stated that Gerald told her he did not want the statements and to shred them with hers, which she did.

Additionally, neither the Trust Agreement nor *Engelsmann* required annual statements to be provided to Beneficiaries before 1988. The Trust Agreement provided the following regarding accounting:

> The Trustee shall render an accounting once each twelve months to each adult, competent beneficiary and to the guardian, if any, or parent (in the case of a minor having no guardian) of any beneficiary under a disability who is then receiving or entitled to receive income hereunder.

The Trust Agreement required an accounting to be provided to beneficiaries who are "then receiving or entitled to receive income." As discussed above, Beneficiaries were entitled to receive income from the Non–Marital Trust only if income remained after distributions were made to Arlene. Between 1982 and 1988, Beneficiaries were not receiving income from the Trust because Trustee had determined that all of the income should be distributed to Arlene.

Likewise, *Engelsmann* did not require Trustee to provide annual statements to Beneficiaries where they did not request them. In that case, remaindermen under a testamentary trust sought to compel an account of the administration of the trust. *Engelsmann*, 402 S.W.2d at 384. The Missouri Supreme Court found that the re-

maindermen were entitled to demand an accounting because beneficiaries, even future beneficiaries, are entitled to seek information concerning the trust and the trustee has a duty to provide such information. *Id.* at 388. *See also* RESTATEMENT (SECOND) OF TRUSTS § 172 cmt. c ("The beneficiary may by a proper proceeding compel the trustee to render to the proper court an account of the administration of the trust.... The trustee may be compelled to account not only by a beneficiary presently entitled to the payment of income or principal, but also by a beneficiary who will be or may be entitled to receive income or principal in the future.").

Even if Trustee had been required to provide annual account statements to Beneficiaries between 1982 and 1988, Beneficiaries did not present any evidence that they were damaged by the lack of account statements during the first few years of the Non–Marital Trust's administration. In fact, Beneficiaries' own trust expert, Professor David English, conceded that he could not identify damages from the failure to provide account statements. Furthermore, even after Gerald began receiving statements, he never made a single request to Trustee for distributions from the Non–Marital Trust. And although Terrance occasionally requested distributions, he waited more than twenty years after he first began receiving account statements in 1988 to file this lawsuit. Given Beneficiaries' inaction for decades, they could not show that they were damaged from the lack of statements before 1988.

The trial court did not err in ruling that Trustee did not breach its duty of impartiality. The point is denied.

### Duty to Properly Invest Trust Assets

In their next point on appeal, Beneficiaries contend that the trial court erred in

ruling in favor of Trustee on their claim for breach of duty to properly invest trust assets. They assert that Trustee failed to exercise reasonable care, skill, and caution in considering the necessary facts and circumstances for making investment decisions. Specifically, they claim Trustee failed to prudently manage the Non–Marital Trust assets by not reasonably diversifying the trust portfolio and by investing only in assets to achieve maximum cash flow for Arlene resulting in no appreciation of the trust assets over the twenty-five year period Trustee administered the trust.

The Trust Agreement provided the following regarding the trustee's investment authority:

> [T]he Trustee is expressly authorized, in its sole and absolute discretion ... [t]o invest the trust estate in such stocks, bonds, notes, and other securities or property, real or personal, foreign or domestic, including shares or interests in investment trusts and common trust funds, as it may deem advisable. Investments need not be diversified and may be made or retained with a view to possible increase in value. The Trustee may at any time hold cash or readily marketable securities of low yield for such period as it may deem advisable except as provided in the Marital Trust.

Prior to Missouri's adoption of the Prudent Investor Act in 1996, the investment of trust assets was governed by the common law Prudent Man Rule, which provided:

> In making investments of trust funds the trustee is under a duty to the benefi-

ciary (a) in the absence of provisions in the terms of the trust or of a statute otherwise providing, to make such investments and only such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived.

*Vest v. Bialson,* 365 Mo. 1103, 293 S.W.2d 369, 379–80 (1956)(quoting RESTATEMENT (SECOND) OF TRUSTS § 227(a)). *See also Hyde,* 363 S.W.2d at 654 (in the investment of trust funds, "it is the duty of a trustee ... to exercise such care and diligence as men of ordinary prudence, intelligence, and discretion would employ, not with a view to speculation, but rather with a view to the permanency of the investment, considering both the probable income and the probably safety of the capital invested.")(internal quotes and citation omitted). In explaining this duty, the Missouri Supreme Court stated that a trustee does not have unlimited authority to invest as an ordinarily prudent man may invest his own funds with the hope of accumulation and the risk such hope imposes, but "on the contrary, may take only such risks as an ordinarily prudent man would take in the investment of the funds of others, bearing ever in mind that it is the preservation of the estate, and not an accumulation to it, which is the chief object and purpose of his trusteeship." *Hyde,* 363 S.W.2d at 654. The Supreme Court also referred to the comments of the Restatement (Second) of Trusts § 227, which lists ten matters to be considered by a trustee in selecting a given investment in addition to those relating to safety and income.[3]

---

**3.** Those matters are:
(1) the marketability of the particular investment; (2) the length of the term of the investment, for example, the maturity date, if any, the callability or redeemability, if any; (3) the probable duration of the trust;

(4) the probable condition of the market with respect to the value of the particular investment at the termination of the trust especially if at the termination of the trust the investment must be converted into money for the purpose of distribution; (5) the

The standard applicable to a trustee's investment of trust assets was extended and clarified with the enactment of the Missouri Prudent Investor Act in 1996. *See* §§ 469.900 to 469.913, RSMo Cum. Supp.2012. Since that enactment, unless the settlor provides otherwise, "[a] trustee shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." § 469.902.1 (formerly § 456.902). *See also* RESTATEMENT (THIRD) OF TRUSTS § 90 & 90(a). Trust investment decisions "must be evaluated not in isolation but in the context of the trust portfolio as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the trust." § 469.902.2. *See also* RESTATEMENT (THIRD) OF TRUSTS § 90(a). Furthermore, when investing and managing trust assets, a trustee shall consider the following factors as are relevant to the trust or its beneficiaries:

(1) General economic conditions;

(2) The possible effect of inflation or deflation;

(3) The expected tax consequences of investment decisions or strategies;

(4) The role that each investment or course of action plays within the overall trust portfolio;

(5) The expected total return from income and the appreciation of capital;

(6) Other resources of the beneficiaries known to the trustee;

(7) Needs for liquidity, regularity of income, and preservation or appreciation of capital;

(8) An asset's special relationship or special value, if any, to the purposes of the trust or to one or more of the beneficiaries; and

(9) The size of the portfolio, nature and estimated duration of the fiduciary relationship and distribution requirements under the governing instrument.

§ 469.902.3. Compliance with the standard must be determined "in light of the facts and circumstances existing at the time of a trustee's decision or action and not by hindsight." § 469.908 (formerly § 456.908).

 Under both the Prudent Man Rule and the Prudent Investor Act, the trustee has specific responsibilities with respect to the trust investment function that are applicable in this case. First, the Prudent Man Rule provided that a trustee has a duty to reasonably diversify the investments to distribute the risk of loss unless the trust instrument relieves the trustee of the obligation. *Hyde*, 363 S.W.2d at 654; *Vest*, 293 S.W.2d at 379. " 'Except as otherwise provided by the terms of the trust, the trustee is under a duty to the beneficiary to distribute the risk of loss by a reasonable diversification of investments, unless under the circumstances it is prudent not to do so.' " *Hyde*, 363 S.W.2d at 654 (quoting RESTATEMENT (SECOND) OF TRUSTS § 228). "By the terms of the trust the requirement of diversification may be dispensed with." *Warmack v. Crawford*, 239 Mo.App. 709, 195 S.W.2d 919, 925 (1946)(quoting Restatement (Sec-

probable condition of the market with respect to reinvestment at the time when the particular investment matures; (6) the aggregate value of the trust estate and the nature of the other investments; (7) the requirements of the beneficiary or beneficiaries, particularly with respect to the

amount of the income; (8) the other assets of the beneficiary or beneficiaries including earning capacity; (9) the effect of the investment in increasing or diminishing liability for taxes; and (10) the likelihood of inflation.

RESTATEMENT (SECOND) OF TRUSTS § 227 cmt. o.

ond) OF Trusts § 228 cmt. f). Likewise, the Prudent Investor Act requires that a trustee "diversify the investments of the trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying." § 469.903 (formerly § 456.903). *See also* RESTATEMENT (THIRD) OF TRUSTS § 90(b).

 Additionally, the trustee has a duty of impartiality among all the beneficiaries in managing the investments of a trust. RESTATEMENT (THIRD) OF TRUSTS § 79(a), § 90 cmt. c; RESTATEMENT (SECOND) OF TRUSTS § 232. As discussed in the point above, "[t]he duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." § 456.8–803, Uniform Trust Code Comment. If by the terms of the trust, the trustee is directed to pay the income to a beneficiary during a designated period and, on the expiration of that period, to pay the principal to others, the trustee has a duty to exercise care to ensure that a reasonable amount of income will be payable to the income beneficiary and it is under a duty to the remainder beneficiaries to exercise reasonable care to preserve the trust property for them. RESTATEMENT (THIRD) OF TRUSTS § 79 cmt. g; RESTATEMENT (SECOND) OF TRUSTS § 232 cmt. b. A grantor's expressed desire that trustees exercise their powers primarily for the benefit of the income beneficiary is an objective standard that must be utilized when determining the reasonableness of the trustees' investments. *Feinberg v. Adolph K. Feinberg Hotel Trust,* 922 S.W.2d 21, 25 (Mo.App. E.D.1996). "In some trust situations the trustee may even invest with a goal of increasing the real value of the principal—a possibility that ... necessarily depends on the terms and purposes of the particular trust." RESTATEMENT (THIRD) OF TRUSTS § 79 cmt. g.

 As with Trustee's distribution powers above, the use of the terms "sole" and "absolute" discretion in the Trust Agreement to describe Trustee's investment authority did not mean Trustee was beyond all control and accountability. *See Vest,* 293 S.W.2d at 380 (although trustee was given the widest discretion in making and managing investments, he was not beyond all control and accountability). *See also* RESTATEMENT (THIRD) OF TRUSTS § 91 cmt. g(1)(the grant of absolute or sole discretion to the trustee in investment of trust assets broadens the trustee's latitude in investment matters but is not unlimited). " 'An authorization by the terms of the trust to invest in a particular type of security does not mean that any investment in securities of that type is proper. The trustee must use care and skill and caution in making the selection.' " *Vest,* 293 S.W.2d at 380 (quoting RESTATEMENT (SECOND) OF TRUSTS § 227 cmt. v). *See also* RESTATEMENT (THIRD) OF TRUSTS § 91 cmt. f ("[T]he fact that an investment is permitted does not relieve the trustee of the fundamental duty to act with prudence. The fiduciary must still exercise care, skill, and caution in making decisions to acquire or retain the investment."). Likewise, a trustee with discretion as to the choice of investments cannot properly invest in hazardous securities. *Vest,* 293 S.W.2d at 380 (quoting RESTATEMENT (SECOND) OF TRUSTS § 187 cmt. i). " 'Thus, if the trustee is permitted to invest in a particular security or type of security in his discretion and the circumstances are such that it would be beyond the bounds of a reasonable judgment to make the investment, the trustee is subject to liability if he makes it.' " *Id.* (quoting RESTATEMENT (SECOND) OF TRUSTS § 227 cmt. v).

Substantial evidence was presented at trial that the Trustee prudently and reasonably invested the Non–Marital Trust assets both before the enactment of the Missouri Prudent Investor Act and after considering the purpose and terms of the Trust Agreement, the needs of the beneficiaries, and the market conditions. As discussed above, review of the Trust Agreement as a whole shows that its purpose was first to provide income to Arlene to support her standard of living. Donald specifically expressed a desire that the trustee exercise its conferred powers first for the benefit of Arlene, whom he designated as the "preferred beneficiary." Income distributions to Donald's sons were limited to any income left over after distributions were made to Arlene. Similarly, in conferring to the trustee the power to "invade" the principal, the Trust Agreement provided that "the interests of [the Grantor] and his wife be preferred to the interests of other beneficiaries."

Sharon Evers, who served as an investment officer and eventually as manager of the trust department, testified that Trustee conducted an investment analysis of the Non–Marital Trust at least annually. She explained that the purpose of the trust to first provide income for Arlene was an important consideration in making investment decisions and setting investment goals for the Non–Marital Trust. She further testified that Trustee also considered several other factors when making investment decisions including the earning capacity of the beneficiaries, the temperament (risk aversion) of the beneficiaries, the anticipated duration of the trust, the size of the trust, the maturity structure and marketability of the investment, the quality of the investment, tax implications of the investment, inflation rates, and overall market conditions. Additionally, Arlene's financial advisor made periodic investment recommendations to Trustee, but

Trustee did not make any investments unless it first determined that they were appropriate based on its own investigation.

Ms. Evers went on to explain that Missouri law regarding investment of trust assets further shaped Trustee's investment objectives. For instance, between 1983 and 1996, when the Prudent Man Rule was the governing law, Trustee invested the Non–Marital Trust assets primarily in bonds, bond funds, certificates of deposit, and other fixed income assets. Such investments in the conservative assets were authorized by the terms of the Trust Agreement, which expressly dispensed with the requirement for diversification and even allowed for trust assets to be held as cash or readily marketable securities of low yield. The investments also satisfied the twin goals of the Prudent Man Rule—income and safety. *See Hyde*, 363 S.W.2d at 654; *Vest*, 293 S.W.2d at 379–80. Ms. Evers explained that although Trust Agreement did not require diversification, Trustee diversified the types of bonds it purchased and that its selection of high quality fixed income investments with high interest rates allowed it to provide a high level of income to Arlene and safety for the principal. Although the investments did not cause the principal of the Non–Marital Trust to grow in value during that time, growth of the principal was not the primary purpose of the Trust Agreement or the chief goal of investing trust assets under the Prudent Man Rule. *See Id.*

With the enactment of the Prudent Investor Act in 1996, Trustee began to gradually change its investment strategy from focusing on income and safety with cash equivalents and fixed income securities to a more balanced and diversified portfolio of stocks and bonds. Ms. Evers testified that in 1996, after Trustee began the process of purchasing stocks, stocks com-

prised approximately 14% of the assets of the Non–Marital Trust and by 1999, the Trust held over 40% of its assets in stock. She explained that Trustee was aware of the manner in which its peers were investing trust assets and that its investment decisions were consistent with the investment decisions being made by its peers at the time. Finally, Ms. Evers testified that despite the changes in the law and investment objectives, Trustee continued to re-evaluate the investment mix of the Non–Marital Trust at least annually.

A finding that Trustee prudently invested the assets of the Non–Marital Trust was further supported by the testimony of Trustee's investment expert, Jennifer Nicholson, who evaluated Trustee's investment decisions considering the terms of the Trust Agreement, the changing standards in Missouri, the account statements of the Non–Marital Trust, Arlene's financial statements, and the testimony of Arlene, Beneficiaries, Mr. Mytton, and Ms. Evers. Ms. Nicholson explained that the 1980s saw an agricultural depression and the failure of multiple financial institutions causing investors, particularly trust companies, to turn to safer investments and to move away from stocks. Interest rates were at an all time high making investments in bonds a prudent choice because they provided a high interest rate with little risk. Also, tax rates were high, making investments in tax-free municipal bonds very appealing. During that time, few households—only about 20–25%—held stocks. Then in October 1987, the country experienced Black Monday when the stock market dropped approximately 40% in only two days. Ms. Nicholson testified that that economic environment coupled with high rates of return on safer fixed income assets provided good reason to invest the Non–Marital Trust assets in the manner in which the Trustee did. She further stated that it was prudent for the Trustee to ease into the stock market in the 1990s.

Based on her review of the facts of this case and the economic environment from 1983 to 2008, Ms. Nicholson opined that Trustee prudently invested the Non–Marital Trust assets during that time. She concluded that the Trustee had a process in place for making its investment decisions and those decisions caused the investments to do well even during difficult economic times. She also concluded that the Trustee protected the Beneficiaries' interests by investing so as to preserve the principal in those difficult economic times.

Substantial evidence demonstrated that Trustee complied with the standards of the Prudent Man Rule before 1996 and the Prudent Investor Act after 1996 in managing and investing the Non–Marital Trust assets. It exercised care, skill, and caution in making investment decisions, and its decisions were not beyond the bounds of reasonable judgment. The trial court, therefore, did not err in ruling that Trustee did not breach its duty to properly invest trust assets. The point is denied.

### Punitive Damages

In their third point on appeal, Beneficiaries claim that trial court erred in ruling that they were not entitled to exemplary and punitive damages. They assert that Trustee intentionally breached its fiduciary duty towards them and acknowledged at the time that it knew it was acting contrary to their interests but continued to act with reckless disregard for their rights and interests as beneficiaries.

Punitive damages are "so extraordinary or harsh" that they should be awarded only sparingly and must be proven by clear and convincing evidence. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 110 (Mo. banc 1996). They are appro-

priate only where the defendant's conduct is outrageous due to evil motive or reckless indifference to the rights of others. *Peters v. General Motors Corp.*, 200 S.W.3d 1, 25 (Mo.App. W.D.2006); *Jacobs v. Bonser*, 46 S.W.3d 41, 45 (Mo.App. E.D. 2001). "However, without an award of actual damages, there can be no award of punitive damages." *Jacobs*, 46 S.W.3d at 45. *See also Marquis Fin. Servs. of Indiana Inc. v. Peet*, 365 S.W.3d 256, 262 (Mo.App. E.D.2012); *Williams v. Williams*, 99 S.W.3d 552, 556 (Mo.App. W.D.2003); *Forbes v. Forbes*, 987 S.W.2d 468, 469 (Mo.App. E.D.1999). Because the trial court did not find Trustee liable for any damages, an award of punitive damages was not proper in this case. Thus, the trial court properly ruled in favor of Trustee on Beneficiaries's claim for punitive damages. The point is denied.

### Attorney's Fees

In their final point on appeal, Beneficiaries claim that the trial court erred in awarding Trustee attorney's fees, costs, and expenses against them and their distributive share of the Non–Marital Trust. They claim that the trial court's judgment was unreasonable and erroneously applied Missouri law because their lawsuit was not vexatious or groundless litigation that justified departure from the American Rule regarding an award of attorneys' fees only upon the presence of special circumstances.

Missouri follows the "American Rule" that provides, absent statutory authorization or contractual agreement, each party bears the expense of his or her own attorney's fees, with few exceptions. *In re Gene Wild Revocable Trust*, 299 S.W.3d 767, 782 (Mo.App. S.D.2009)(quoting *Klinkerfuss v. Cronin*, 199 S.W.3d 831, 843 (Mo.App. E.D.2006)(*Klinkerfuss II*)). "Special circumstances" is one of the few exceptions to the American Rule. *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 618 (Mo. App. E.D.2009)(*Klinkerfuss III*). "[I]ntentional misconduct constitutes 'special circumstances' justifying an award of attorney's fees." *Id.* at 619. Beneficiaries argue that their lawsuit was not vexatious or groundless; therefore, departure from the American Rule for special circumstances was erroneous.

Beneficiaries' argument, however, ignores another exception to the American Rule—statutory authorization of an award of attorney's fees. Section 456.10–1004, RSMo Cum.Supp.2012, provides that a party may recover the attorney's fees, expenses, and costs it incurs in litigation involving the administration of a trust:

> In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy.

Where the legislature statutorily authorizes an award of attorney's fees in the discretion of the trial court as in this case, the decision to grant or deny attorney's fees is reviewable for an abuse of discretion. *In re Gene Wild Revocable Trust*, 299 S.W.3d at 782. The trial court abuses its discretion in awarding attorney's fees if the award is either arbitrarily arrived at or so unreasonable as to indicate indifference and lack of proper judicial consideration. *Id.* (internal quotes and citation omitted). "An award of attorney's fees is presumed to be correct, with the burden on the complaining party to prove otherwise." *Id.* (internal quotes and citation omitted). When reviewing a challenge to an attorney's fees award, the appellate court gives deference to the discretion of the trial

judge who, by virtue of his or her office and experience, is considered an expert in determining the proper amount of compensation for legal services. *Id.* at 782–83.

■ Section 456.10–1004 does not require a finding of intentional misconduct. In *Klinkerfuss III*, the Eastern District recognized a federal district court case, *Kutten v. Bank of Am., N.A.*, 2008 WL 4838152, *3 (E.D.Mo. Nov. 6, 2008), rejecting the plaintiff beneficiaries' argument that section 456.10–1004 applied only in the case of bad faith or egregious conduct. 289 S.W.3d at 617. The Eastern District determined in *Klinkerfuss III* that the statute applied to the suit that involved administration of a trust and justice and equity required the award otherwise the trustee would have to personally bear the expense for performing his duty to the trust. *Id.* at 618. Additionally, in *In re Gene Wild Revocable Trust*, the Southern District found that an award of attorney's fees under section 456.10–1004 was proper where the "litigation was brought and defended in good faith and there were issues raised which could only have been settled via judicial determination." 299 S.W.3d at 783. *See also Rouner v. Wise*, No. WD75305, —— S.W.3d ——, ——, 2013 WL 3880150, *10 (Mo.App. W.D. July 30, 2013)(finding trial court did not abuse its discretion in awarding attorney's fees in favor of defendants where it determined that complex issues raised in plaintiffs' petition were not frivolous and required judicial determination and that defendants incurred attorney's fees in defending the trust).

In this case, Beneficiaries sought compensatory and punitive damages alleging that Trustee breached its duties of impartiality and to properly invest the trust assets. Such claims raised complex issues and required judicial resolution. Trustee was compelled to defend virtually the entirety of its approximately twenty-five year administration of the Non–Marital Trust in two years of extensive litigation. In finding for Trustee on Beneficiaries' claims, the trial court necessarily determined that Trustee administered the Non–Marital Trust and invested its assets as directed by Donald in the Trust Agreement. By defending its conduct, Trustee was defending Donald's intent. *See Klinkerfuss II,* 199 S.W.3d at 844 (quoting *Weidlich v. Comley,* 267 F.2d 133, 134 (2d Cir. 1959)("When the trustee's administration of the assets is unjustifiably assailed it is a part of his duty to defend himself, for in so doing he is realizing the settlor's purpose.")). Justice and equity required Trustee to recover the expenses it incurred in defending against Beneficiaries' claims under section 456.10–1004. The trial court did not abuse its discretion in awarding Trustee attorney's fees, costs, and expenses against Beneficiaries and their distributive share of the Non–Marital Trust. The point is denied.

■ Finally, Trustee filed in this court a motion for attorney's fees on appeal with supporting documentation. The motion was taken with the case. It seeks $37,209.60 in additional attorney's fees incurred during the pendency of this appeal. Again, section 456.10–1004 applies here because this appeal is "a judicial proceeding involving the administration of a trust." Additionally, justice and equity recommends an award otherwise Trustee would have to personally bear the expense for performing its duty to the trust. *See Klinkerfuss III,* 289 S.W.3d at 617–18 (Justice and equity required award of attorney's fees incurred on appeal otherwise "either the innocent beneficiary, who had no part in the litigation, would find her share of the trust depleted due to her sister's vexatious litigation, or the trustee would have to personally bear the expense

for performing his duty to the trust."). Accordingly, Trustee's motion for attorney's fees on appeal is granted, and Trustee is awarded $37,209.60 to be paid, on a joint and several basis, by Beneficiaries and from their interest in the Donald O'Riley Non–Marital Trust.

The judgment of the trial court is affirmed.

All concur.