

# In the Missouri Court of Appeals
# Western District

| | |
|---|---|
| IN THE MATTER OF ) | |
| THE H. BOONE PORTER TRUST ) | |
| CREATED UNDER THE DEED OF ) | |
| TRUST DATED AUGUST 1, 1960, ) | WD84894 |
| AS AMENDED BY AMENDMENT ) | |
| DATED MAY 14, 1968, AS ) | Filed: February 21, 2023 |
| REFORMED BY JUDGMENT ) | |
| DATED JULY 27, 1999, AND AS ) | |
| FURTHER AMENDED BY ) | |
| CONSENT JUDGMENTS DATED ) | |
| NOVEMBER 21, 2002, AND ) | |
| APRIL 23, 2004, AND ALSO KNOWN ) | |
| AS REGISTERED TRUST ) | |
| NO. 169041, H. BOONE PORTER, III, ) | |
| ) | |
| Respondent, ) | |
| v. ) | |
| ) | |
| CAROLINE PORTER HAYES, et al., ) | |
| ) | |
| Appellants. ) | |

## APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
### The Honorable Daren L. Adkins, Judge

**Before Division Two: Edward R. Ardini, Jr., Presiding Judge,
Lisa White Hardwick, Judge, and Karen King Mitchell, Judge**

Caroline Porter Hayes, Ann T. Porter, John M. Porter, and Mary L. Porter

(collectively, "Appellants"), appeal the circuit court's judgment denying their request to

remove H. Boone Porter, III, ("Boone")[1] as the individual co-trustee of a trust of which they are beneficiaries and to appoint a corporate co-trustee. Appellants contend Boone's actions require his removal as trustee and the appointment of a corporate co-trustee and the court's failure to appoint a corporate co-trustee is contrary to the trust's terms and the settlor's intent. For reasons explained herein, we affirm, in part, and reverse and remand, in part.

## FACTUAL AND PROCEDURAL HISTORY

In 1960, H. Boone Porter ("settlor"), the grandfather of Boone and the great-grandfather of Appellants, created a double generation-skipping trust ("1960 Trust") for the benefit of his descendants.[2] Boone and his siblings are the current income beneficiaries under the trust. Boone has four living siblings and one deceased sibling, Michael Porter, who died in 2005. Appellants are Michael's four children. Thus, Boone and his four siblings each receive 1/6th of the trust's monthly income, while Appellants each receive 1/24th, *i.e.,* 1/4th of Michael's 1/6th share, of the trust's monthly income. Appellants and their seven cousins, who are the children of Boone and his siblings, are contingent remainder beneficiaries entitled to receive the corpus of the trust when the 1960 Trust is terminated upon the death of the last to survive of Boone and his siblings. As of May 2021, the 1960 Trust was valued at approximately $38 million.

When it was created, the 1960 Trust appointed only a corporate trustee, a bank. The trust requires that the corporate trustee be organized as a corporation and have

---

[1] For clarity's sake, we will refer to several members of the Porter family by their first names. No familiarity or disrespect is intended.

[2] The 1960 Trust was amended May 14, 1968, reformed *ab initio* by the circuit court's judgment dated July 27, 1999, and amended by the circuit court's consent judgments dated November 21, 2002, and April 23, 2004. All references to the "1960 Trust" will be to the current amended version.

unimpaired capital in excess of $10 million. Pursuant to the trust's terms, once the settlor died, the settlor's son, who was Boone's father, became co-trustee along with the corporate co-trustee. In April 1990, Boone succeeded his father as the individual co-trustee of the 1960 Trust. Boatmen's Trust Company became the corporate co-trustee at that time and was later succeeded by Commerce Trust Company ("Commerce").

Paragraph 8 of the 1960 Trust authorizes the co-trustees[3] to make discretionary payments to beneficiaries out of the trust principal under certain circumstances:

> The Trustee is authorized to pay, out of principal of the trust property, to or for the benefit of any beneficiary who at the time is entitled to receive income from the trust property, hospital, nursing, and medical expenses of any such beneficiary, and also such amounts as may be considered advisable for the maintenance and support of any such beneficiary; but the amount or amounts of any such payments shall be determined by the Trustee in its sole discretion.

In July 2012, all beneficiaries were notified of a proposed plan of partial distribution. The beneficiaries were advised that the co-trustees, Boone and Commerce, were planning to make discretionary distributions pursuant to paragraph 8 of the trust in the amount of $150,000 each to Boone and his four siblings. While Boone requested that the distributions be made, he abstained from voting on whether he should receive any distribution. Commerce decided he should receive a distribution. The proposed plan did not include any discretionary distributions to Appellants. The notice advised all beneficiaries of their statutory right to object to the proposed distribution within 30

---

[3] The 1960 Trust provides that all references to "trustee" mean "co-trustees" after Boone's father became the trust's first individual co-trustee.

days under Section 456.8-817.1.[4]  Appellants did not object to the July 2012 plan of partial distribution.

In June 2013, all beneficiaries were notified of another proposed plan of partial distribution.  This time, the beneficiaries were advised that the co-trustees were proposing to make discretionary distributions pursuant to paragraph 8 of the trust in the amount of $100,000 each to Boone and his four siblings.  Boone again abstained from voting on whether he should receive the distribution, and Commerce decided he should receive it.  The proposed plan did not include any discretionary distributions to Appellants.  Appellants' counsel formally objected to the proposed distribution plan within 30 days.  After receiving Appellants' objection, the co-trustees withdrew their proposal and, per Appellants' wishes, did not make the proposed partial distribution.

In July 2013, Boone and his four siblings asked Commerce to resign as corporate co-trustee.  The trust provides that the beneficiaries of two-thirds of the trust's income can remove and replace either the individual co-trustee or the corporate co-trustee if the beneficiaries are dissatisfied.  Commerce resigned, and Blue Ridge Bank and Trust Company, acting through its agent, The Midwest Trust Company ("Blue Ridge"), became the corporate co-trustee in October 2013.  Blue Ridge, however, resigned as the corporate co-trustee in April 2014.  After Blue Ridge resigned as the corporate co-trustee, no successor corporate co-trustee was appointed, leaving Boone as the sole trustee of the 1960 Trust.

Following Blue Ridge's resignation, Boone sent a letter to all beneficiaries asking them to agree to amend the trust to remove the requirements that the trust's corporate co-trustee be organized as a corporation and have unimpaired capital in excess of $10

---

[4] All statutory references are to the Revised Statutes of Missouri 2016.

million. Boone stated that, if all beneficiaries agreed to the amendment, he would obtain a consent judgment in the Jackson County Circuit Court, Probate Division, amending the trust. Appellants and one of Boone's siblings did not agree to this amendment. Boone subsequently filed a petition asking the court to approve the amendment.

While his petition to amend the trust was pending, Boone determined in December 2015 that it was advisable to make in-kind discretionary corpus distributions from the 1960 Trust to all income beneficiaries, including Appellants, for their maintenance and support. Specifically, Boone distributed to Appellants, as tenants in common with equal undivided ownership rights, a note and mortgage that were owned by the trust. The note was independently appraised to have a fair market value of $1,262,459. The note was originally for a loan in the amount of $750,000 to Michael and his wife, Prudence, in April 2003 before Michael died, and the loan was secured by a mortgage on Michael and Prudence's home.[5] Boone then divided the 1960 Trust's 92.757% limited partnership interest in VMBP Limited Partnership ("VMBP"), into five equal 18.551% limited partnership interests, which had been independently appraised to

---

[5] The VMP Fund, a trust created by Appellants' grandmother, Violet Porter, originally made the loan to Michael and Prudence. Boone and Violet, as trustees for the VMP Fund, extended the loan because Michael and Prudence were experiencing a medical and fiscal crisis due to Michael's cancer diagnosis. The terms of the loan were that Michael and Prudence would be required to pay only $250 per month in accrued interest until the note's maturity on May 1, 2018, at which time all unpaid principal and all accrued but unpaid interest were to become due and payable in a lump sum of approximately $1,405,250. When Violet died in 2009, the VMP Fund made specific cash bequests, including approximately $197,000 to each of the Appellants. Because Violet's estate did not have enough cash to make those bequests, the VMP Fund, at Boone's direction, sold the promissory note and mortgage to VMBP Limited Partnership ("VMBP"), which provided the VMP Fund with sufficient cash to fund the bequests. The 1960 Trust, which held a 92.757% limited partnership interest in VMBP, acquired the note and mortgage from VMBP.

have a fair market value of $1,216,975 each, and distributed those limited partnership interests to himself and his four siblings. Additionally, Boone gave himself and his four siblings $45,484 each from the trust so that the total value distributed to each of the five as beneficiaries with 1/6th distribution interests was *pro rata* to the total value distributed to Appellants as current income beneficiaries with a cumulative 1/6th distribution interest. The appraisals of the distributed assets were conducted by Capital Advisors, Inc., which had previously appraised the fair market values of the note and mortgage and the limited partnership interest in VMBP on multiple occasions. Boone relied in good faith on Capital Advisors' appraisal reports in structuring and making these in-kind discretionary corpus distributions.

Appellants consented to accept their share of the 2015 in-kind discretionary corpus distribution proceeds. In August 2016, three of the Appellants and Prudence signed an amended and restated note that modified the terms of the April 2003 note. In November 2016, the assignment of mortgage to Appellants was recorded with the Union County, New Jersey County Clerk's Office, thereby perfecting Appellants' first priority mortgage lien conveyed to them under that instrument.

Meanwhile, Appellants responded to Boone's petition to amend the trust by filing an answer asking the court to deny Boone's petition. Appellants also filed a counterclaim asking the court to remove Boone as trustee as a remedy for his breach of

6

trust under Sections 456.10-1001.2(7) and 456.7-706 and to appoint a corporate co-trustee.[6]

Following a bench trial, the court denied Boone's request to amend the trust to change the form of organization and capital requirements for the corporate co-trustee. The court denied Appellants' requests to remove Boone as trustee and to appoint a corporate co-trustee. The court also denied both parties' motions under Section 456.10-1004 for attorney's fees and costs. Appellants appeal.

## STANDARD OF REVIEW

We will affirm the judgment in this court-tried case "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *Brown v. Brown-Thill*, 543 S.W.3d 620, 626 (Mo. App. 2018) (quoting *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012)). We review questions of law *de novo*. *Id*. We defer to the circuit court's judgment on questions of fact because "it is in a better position not only to judge the credibility of the witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *Id*. (quoting *Pearson*, 367 S.W.3d at 44). When reviewing mixed questions of law and fact, we defer to the circuit court's findings of fact but review the application of the law to the facts *de novo*. *Id*.

## ANALYSIS

In Point I, Appellants contend the circuit court erred in denying their request to remove Boone as trustee because he consistently breached his fiduciary duties of loyalty

---

[6] Appellants' counterclaim included additional claims for an accounting and to divide the 1960 Trust. Appellants do not appeal the court's judgment in favor of Boone on those claims; therefore, we will not discuss them.

and impartiality toward them by excluding them from discretionary distribution plans, failing to communicate with them, and showing favoritism toward other income beneficiaries, and his actions demonstrate an unwillingness or a persistent failure to administer the trust effectively.

"The power of a court to remove a trustee should be used sparingly." *Betty G. Weldon Revocable Trust v. Weldon*, 231 S.W.3d 158, 178 (Mo. App. 2007). Before the court exercises such power, "misconduct showing want of capacity or of fidelity jeopardizing the trust must be evident." *Id.* "The removal of a trustee calls for the exercise of sound judicial discretion, which should not be abused." *Id.* (citation omitted).

Appellants assert Boone's removal is appropriate under Sections 456.7-706.2(1) and 456.7-706.2(3). Section 456.7-706.2(1) provides that the circuit court has discretion to remove and replace a trustee when "the trustee has committed a serious breach of trust." Appellants argue Boone breached the trust by failing to fulfill his fiduciary duties of loyalty and impartiality to them. The duty of loyalty is the most fundamental duty of a trustee's fiduciary relationship with the trust's beneficiaries. *John R. Boyce Family Trust v. Snyder*, 128 S.W.3d 630, 636 (Mo. App. 2004). "The duty to act impartially does not mean that the trustee must treat the beneficiaries equally. Rather, the trustee must treat the beneficiaries equitably in light of the purposes and terms of the trust." *O'Riley v. U.S. Bank, N.A.,* 412 S.W.3d 400, 407 (Mo. App. 2013) (citation omitted).

Section 456.7-706.2(3) gives the circuit court discretion to remove and replace a trustee when, "because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best

8

serves the interests of the beneficiaries." "Unwillingness" in this statute "involves not only cases where the trustee refuses to act, but also 'a pattern of indifference to some or all of the beneficiaries.'" *Weldon*, 231 S.W.3d at 181 (citations omitted).

In reviewing the propriety of a trustee's particular acts, we are guided first by the terms of the trust. *See* § 456.1-105. *See also Jarvis v. Boatmen's Nat'l Bank*, 478 S.W.2d 266, 273 (Mo. 1972). The 1960 Trust authorizes the trustee (or co-trustees, when a corporate co-trustee is also serving) to make payments to income beneficiaries "as may be considered advisable" for the beneficiaries' maintenance and support, and it vests the trustee with the "sole discretion" to determine the amount of such payments. The 1960 Trust further provides that a trustee is not liable for acts taken in good faith; instead, a trustee is liable "only for its own willful negligence, default or malfeasance and not for honest errors in judgment." The trust's standards are consistent with statutory standards for trust administration. Section 456.8-814.1 provides that, "[n]otwithstanding the use of such terms as . . . 'sole' . . . in the exercise of discretion under an ascertainable standard, the trustee shall exercise such discretionary power in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries." Additionally, Section 456.10-1006 provides that "[a] trustee who acts in reasonable reliance on the terms of the trust as expressed in the trust instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance."

Appellants cite six of Boone's actions that they allege show his breach of the duties of loyalty and impartiality and his indifference toward them: (1) planning to distribute $750,000 each to himself and his siblings without giving any money to Appellants; (2) distributing valuable partnership interests in VMBP to himself and his

9

siblings while giving Appellants only a mortgage on their mother's home; (3) failing to meaningfully consider the ascertainable standards under the trust when making these distributions; (4) failing to maintain a good working relationship with corporate co-trustees; (5) failing to communicate with Appellants about important trust matters while having those conversations with all other income beneficiaries; and (6) treating Appellants differently when they seek trust distributions.

In its judgment, the court specifically found Boone acted in good faith and in reasonable reliance on the terms of the 1960 Trust. The evidence and inferences supporting this finding are as follows. Boone is a lawyer who worked with trust companies and other banking organizations extensively throughout his career and is the trustee of several other Porter family trusts in addition to the 1960 Trust. He recognizes that he has to treat each beneficiary under these trusts in accordance with the terms and conditions of the particular trust instrument.

Boone understands that paragraph 8 of the 1960 Trust allows him to make distributions of the corpus to income beneficiaries when he deems it advisable for their maintenance and support. He decides whether to make distributions after considering the facts and circumstances of each individual beneficiary. Because the beneficiaries under the 1960 Trust are family members, Boone has general contact with them and also has specific meetings with them on an individual basis, so he is aware of their financial situations.

In 2009, Boone adopted a marshaling procedure for all of the Porter family trusts. Under this procedure, if a beneficiary has access to other family trusts, distributions to that beneficiary are to come first from a trust for which the beneficiary is the sole or one of a smaller number of beneficiaries. This procedure is designed to

preserve the assets in trusts like the 1960 Trust, which has numerous beneficiaries. According to Boone, it also promotes fairness between the generations of beneficiaries because the younger generation, which includes Appellants, have access to other family trusts, while members of Boone's generation have access only to the 1960 Trust. Appellants did not object to the marshaling procedure when Boone implemented it in 2009.

Boone meaningfully considered the trust's standards in determining whether the disputed distributions were advisable for the 1960 Trust's income beneficiaries' maintenance and support. When Boone proposed distributing a total of $750,000 to himself and his siblings, he and Commerce, then the corporate co-trustee, decided to make the distribution in five increments, on a case-by-case basis, after considering the facts and circumstances each year. Boone abstained from voting on whether he should receive the distributions. Only one of the incremental distributions was actually made, in 2012, and Appellants did not object to it. Boone and Commerce withdrew the 2013 proposed incremental distribution after Appellants objected, and no further incremental distributions were proposed or made.

Likewise, in distributing the limited partnership interests in VMBP to himself and his siblings and the note and mortgage to Appellants in 2015, Boone considered what stage of life each income beneficiary was in and their current needs, and he obtained an independent appraisal of the distributed assets. Because Appellants had previously asked Boone to give them the note and mortgage on Prudence's home, and Appellants had, in 2009, redeemed their non-partner mere assignee interests in VMBP and agreed to cease all right, title, and interest in VMBP, its business, and its assets,

Boone decided it was appropriate to distribute the note and mortgage to Appellants and the limited partnership interests in VMBP to himself and his siblings.

As for Boone's relationship with the corporate co-trustees, Boone and his siblings asked Commerce to resign in 2013 because they believed Commerce could "best handle trust relationships that have different asset size and that possess a different structural organization than does ours." Boone did not believe he needed to discuss the request for Commerce's resignation with Appellants because he and his siblings comprise the requisite number of income beneficiaries to ask for a corporate co-trustee's resignation. Boone admitted that he had disagreements with Commerce over Commerce's desire to share what he believed to be information protected by attorney-client privilege with Appellants' counsel. Boone also admitted that he had disagreements with Blue Ridge regarding the release of internal information about VMBP to Appellants. Boone believed releasing the information without first requiring Appellants and their counsel to sign a confidentiality agreement would violate the fiduciary duty he owed to VMBP. Ultimately, the court entered a protective order, and Boone provided Appellants the information about VMBP that they were seeking.

This constitutes substantial evidence to support the court's finding that Boone acted in good faith and in reasonable reliance on the trust and did not breach his duties of loyalty and impartiality or act indifferently toward Appellants. In arguing otherwise, Appellants ignore this evidence and rely solely on evidence unfavorable to the judgment.[7] This is contrary to our standard of review. *O'Riley,* 412 S.W.3d at 406. We

---

[7] For example, to support their contention that Boone treats Appellants differently when they seek distributions from the trust, Appellants rely on evidence that Boone denied a request from one of the Appellants for a distribution from *a different family trust* on the basis that she did not provide sufficient financial information to him. It is apparent that

must defer to the circuit court's credibility determinations and the weight it accords the evidence. *Id*. at 405-06. The court did not err in denying Appellants' request to remove Boone as trustee. Point I is denied.

In Point II, Appellants contend the circuit court erred in denying their request for the appointment of a corporate co-trustee. They argue that, under the trust's terms, any interested beneficiary can apply to the court to fill a trustee vacancy, and the court's ruling fails to give effect to the settlor's intent that there should always be both an individual and a corporate co-trustee.

In its judgment, the court denied Appellants' request for the appointment of a corporate co-trustee on the basis that Appellants pled in their counterclaim that they were seeking the appointment only as a remedy for Boone's breach of trust under Section 456.10-1001. Section 456.10-1001.2(10) states that the court may "order any other appropriate relief" to remedy a breach of trust. Because Appellants failed to prove a breach of trust that caused them harm, the court concluded that it could not grant them the relief of appointing a corporate co-trustee. We disagree.

Paragraph 16 on the 1960 Trust gives persons interested in the trust estate the authority to seek the court's appointment of a corporate co-trustee if certain conditions are met:

> At any time there shall be a vacancy in the office of one of the Co-Trustees, beneficiaries entitled to receive two-thirds of the income from the trust estate may by a writing fill the vacancy by the appointment of a corporation having the qualifications hereinabove set forth or an individual, according to the vacancy which exists, but *if any such vacancy occurs and said beneficiaries fail to fill the vacancy as here provided, the remaining Trustee or any other person interested in the trust estate shall have authority to apply to a court of competent jurisdiction for the appointment of a Trustee to fill the vacancy*, it being the desire of the

the circuit court did not find this evidence persuasive as to Boone's alleged unfair treatment with regard to the 1960 Trust; therefore, we must disregard it.

> [settlor] that there shall be acting at all times an individual Co-Trustee and a corporate Co-Trustee, the latter having the qualifications hereinabove set forth.

(Emphasis added.) Pursuant to the italicized language, as long as a vacancy occurs in the corporate co-trustee position and both the beneficiaries entitled to two-thirds of the trust's income and the individual co-trustee fail to fill it, persons interested in the trust estate, such as Appellants, have the authority to ask the court to appoint a corporate co-trustee. Paragraph 16 does not require that Appellants, in exercising this authority, prove that Boone committed a breach of trust. Likewise, paragraph 16 does not require the court to find that Boone committed a breach of trust before granting Appellants' request and appointing a corporate co-trustee.

Appellants alleged in Count III of their counterclaim that Boone's breach of trust entitled them to the statutory remedies for breach of trust enumerated in Section 456.10-1001.2(10), and that "any other appropriate relief" included the appointment of a corporate co-trustee. However, they also alleged, in facts incorporated into Count III, that since Blue Ridge's resignation as corporate co-trustee, the corporate co-trustee position has been vacant, and Boone and the beneficiaries entitled to two-thirds of the trust's income have not designated a replacement—facts which triggered Appellants' authority to seek the court's appointment of a corporate co-trustee under paragraph 16.

While the case was pending before trial, both Boone and the circuit court addressed Appellants' authority under paragraph 16 to obtain the relief they were seeking in Count III of their counterclaim. In August 2016, Boone filed a motion for partial summary judgment on Appellants' Count III. In his suggestions in support of the motion, Boone insisted that, under paragraph 16, "other interested parties" such as Appellants could not ask the court to fill the corporate co-trustee vacancy until such

14

time as the beneficiaries of two-thirds of the trust's income failed to fill the vacancy and the individual co-trustee failed to fill the vacancy, and "[n]either of those contingencies has occurred in this case." He argued that the beneficiaries of two-thirds of the trust's income have the "absolute right" to appoint the successor corporate co-trustee and that the only reason no successor corporate co-trustee had been appointed after Blue Ridge's resignation was because of Appellants' "totally unexplained" opposition to his requested modification of the trust's organizational and capital requirements for the corporate co-trustee. Boone alleged that, as soon as the court ruled on his petition to modify these requirements in the trust, "it is contemplated" that the beneficiaries of two-thirds of the trust's income would appoint a successor corporate co-trustee.

In denying Boone's motion for partial summary judgment, the court[8] made specific findings in its order about the nature of Appellants' claim in Count III. The court found that Appellants were seeking the appointment of a corporate co-trustee and, to support this request, they were alleging that Boone breached his fiduciary duty. The court found, however, that it did not need to address whether Boone breached his fiduciary duty because, under the terms of paragraph 16 of the trust, Appellants had the "independent authority" to ask the court to fill the co-trustee vacancy if neither Boone nor the beneficiaries entitled to two-thirds of the trust income made such appointment, and neither had. The court then expressly stated, "In Count III, [Appellants] seek to exercise the authority granted them under the provisions of paragraph 16 of the Trust Agreement by seeking the Court's appointment of a corporate trustee." The court concluded that, because Appellants' action for the appointment of a corporate trustee in

---

[8] The judge who ruled on this partial summary judgment motion was not the same judge who presided over the trial.

Count III was "brought pursuant to authority specifically conferred upon them by the Trust Agreement as persons interested in the Trust estate," Boone was not entitled to summary judgment as a matter of law on this count.

Essentially, the court's ruling denying Boone's partial summary judgment motion amended Appellants' counterclaim, *sua sponte*, to explicitly state what the allegations in Appellants' counterclaim and the evidence presented in the partial summary judgment pleadings demonstrated: Appellants' Count III asserted a claim for the court's appointment of a corporate co-trustee both as a remedy for Boone's breach of trust and as an action they had the authority to seek under paragraph 16 of the trust. *See McNear v. Rhoades*, 992 S.W.2d 877, 880-81 (Mo. App. 1999) (holding the circuit court has the authority to amend pleadings, *sua sponte*, to conform to the evidence, providing the court could have done so by motion of the parties). Appellants again asserted both of these grounds for the court's appointment of a corporate co-trustee in the bench brief they filed three months before trial.

At trial, the evidence was undisputed that, since Blue Ridge resigned as corporate co-trustee in April 2014, the corporate co-trustee position was vacant, and neither the beneficiaries of two-thirds of the trust's income nor Boone had filled the vacancy. Therefore, the conditions precedent to the Appellants' seeking the court's appointment of a co-trustee under paragraph 16 were met. The judgment on Count III is reversed,

16

and the cause is remanded to the circuit court to appoint a corporate co-trustee pursuant to paragraph 16 of the trust. Point II is granted.[9]

Because Appellants were entitled to have the court appoint a corporate co-trustee under paragraph 16 of the 1960 Trust, we need not address their claim in Point III that the circuit court erred in denying their request to appoint a corporate co-trustee as a remedy for breach of trust under Section 456.10-1001.2(10).

### MOTIONS FOR ATTORNEY'S FEES AND COSTS ON APPEAL

Boone filed a motion for attorney's fees on appeal, and Appellants filed a motion for attorney's fees and costs on appeal. Both motions were filed pursuant to Section 456.10-1004. Section 456.10-1004 allows the court to award costs and expenses, including reasonable attorney's fees, in judicial proceedings involving the administration of a trust "as justice and equity may require." In light of our disposition of the appeal, we do not find that justice and equity require an award of attorney's fees and costs on appeal to either party.

### CONCLUSION

The judgment is affirmed, in part, and reversed and remanded, in part. Boone's motion for attorney's fees on appeal and Appellants' motion for attorney's fees and costs on appeal are denied.

_____
LISA WHITE HARDWICK, JUDGE

All Concur.

---

[9] Having found that Appellants are entitled to have the court appoint a corporate co-trustee under paragraph 16 of the trust, we need not address Appellants' additional claim in Point II that the court's denial of their request to appoint a corporate co-trustee fails to give effect to the settlor's intent that there should always be both an individual and a corporate co-trustee.